## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANGELICA HALE,

         **Plaintiff,**

vs.

                                       **Case No. 16-4182-DDC-TJJ**

EMPORIA STATE UNIVERSITY,
GWEN ALEXANDER,
DAVID CORDLE, and
JACKIE VIETTI,

         **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Angelica Hale filed this action pro se[1] against defendants Emporia State University ("ESU"), Gwen Alexander, David Cordle, and Jackie Vietti.  Plaintiff alleges that her former employer, ESU, violated Title VII by terminating her employment as retaliation because she complained about racial discrimination.  Plaintiff also alleges that defendants Alexander, Cordle, and Vietti retaliated against her after she exercised her right to speak out against discrimination and racism.  Based on this allegation, plaintiff asserts a First Amendment retaliation claim under 42 U.S.C. § 1983 against these three individuals in their individual capacities.

On November 22, 2017, plaintiff filed a Motion to Compel.  Doc. 63.  Plaintiff's motion sought an order compelling ESU to produce all internal investigation documents that ESU had withheld and identified on its privilege log as protected by attorney-client privilege and the work

---

[1] Because plaintiff proceeds pro se, the court construes her pleadings liberally.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers).

product doctrine.  Plaintiff's motion to compel argued, among other things, that the withheld documents are discoverable because they come within the crime-fraud exception to privilege.

On February 20, 2018, Judge Teresa J. James granted plaintiff's motion in part and denied it in part.  Doc. 71.  Specifically, Judge James identified certain email communications that did not contain attorney-client privileged communications or work product.  *Id.* at 19–20.  Judge James thus ordered ESU to produce the identified documents to plaintiff.  *Id.* at 19.  Judge James denied the motion in all other respects.  Among other things, her ruling specifically rejected plaintiff's arguments under the crime-fraud exception.  *Id.* at 3–7.

Plaintiff has filed an Objection to Judge James's Order.  Doc. 73.  She asserts that Judge James erred by refusing to order production of the withheld documents under the crime-fraud exception to privilege.  And she asks the court to set aside that portion of Judge James's Order under Federal Rule of Civil Procedure 72(a).  For reasons explained below, the court overrules plaintiff's Objection and affirms Judge James's decision.

## I.    Legal Standard

Federal Rule of Civil Procedure 72(a) permits a party to present specific, written objections to a magistrate judge's order.  When reviewing a magistrate judge's order deciding nondispositive pretrial matters, the district court applies a "clearly erroneous or contrary to law" standard of review.  *See First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  Under this clearly erroneous standard, the district court does not conduct a de novo review of the factual findings; instead, it must affirm a magistrate judge's order unless a review of the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed."  *Ocelot Oil Corp.*, 847 F.2d at 1464.  In

contrast, "the contrary to law" standard permits the district court to conduct an independent review of purely legal determinations made by the magistrate judge. *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citations omitted). A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Walker v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, No. 09-1316-MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (quotation omitted).

## II.    Analysis

Plaintiff asserts that Judge James erred by refusing to compel ESU to produce internal investigation documents that, plaintiff contends, are discoverable under the crime-fraud exception to the attorney-client privilege. Plaintiff alleges that defendants fraudulently investigated her and her husband's report of a hate crime and racism at ESU. Plaintiff contends that defendants, working with counsel, misled and deceived the public by falsely reporting the investigation's results at a press conference on September 9, 2015. Plaintiff alleges that defendants reported the false information to give the public the false impression that ESU had done nothing wrong and to accuse plaintiff's husband—falsely—of "perpetrating a hate hoax." Doc. 73 at 3. Plaintiff asserts that defendants' fraudulent conduct disparaged her and her husband's names and reputation.

Based on these facts, plaintiff argued to Judge James that ESU's internal investigation documents were discoverable under the crime-fraud exception to privilege. Judge James disagreed. Judge James first explained the law governing the crime-fraud exception:

> Under the crime-fraud exception, "[t]he attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995). *See Clark v. United States*, 289 U.S. 1, 15 (1933) ("There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission

of a fraud will have no help from the law. He must let the truth be told."). The crime-fraud exception also applies to documents claimed to be protected from discovery as work product. *See In re Vargas*, 723 F.2d 1461, 1467 (10th Cir. 1983) (court's analysis on crime-fraud exception applied to "both the attorney-client and work-product privileges"). The purpose of the crime-fraud exception is to assure that the seal of secrecy between the attorney and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime. *United States v. Zolin*, 491 U.S. 554, 563 (1989); *Burton v. R. J. Reynolds Tobacco Co.*, 167 F.R.D. 134, 140 (D. Kan. 1996). The crime-fraud exception has not been extended to torts generally. *Motley*, 71 F.3d at 1551. The party claiming that the crime-fraud exception applies must present *prima facie* evidence that the allegation of attorney participation in a crime or fraud has some foundation in fact. *Id.* The determination of whether such a *prima facie* showing has been made is left to the sound discretion of the district court. *Id.*

Doc. 71 at 4–5.

Judge James next recognized that plaintiff was contending that ESU's general counsel was involved in the commission of a fraud. *Id.* at 5. Judge James then recited the elements of fraud under Kansas law:

> (1) The defendant made a false statement concerning an existing and material fact; (2) the defendant knew the statement was false or recklessly made the statement without knowing its validity; (3) the defendant intentionally made the statement for the purpose of inducing the plaintiff to act upon it; (4) the plaintiff reasonably relied and acted upon the defendant's statement; and (5) the plaintiff sustained damage by relying upon the statement.

*Id.* (citing PIK Civ. 4th 127.40; *Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241, 1246 (Kan. 2005)).

Judge James concluded that plaintiff had failed to make a *prima facie* showing of fraud for several reasons. She determined that "many of the alleged false statements do not appear to be material statements of fact made by the [d]efendants for purposes of inducing [p]laintiff to act upon them." *Id.* And so, plaintiff could not satisfy the first and third elements of fraud. *Id.* Judge James also found that plaintiff's allegations could not satisfy the fourth and fifth elements because "[p]laintiff does not allege that she reasonably relied and acted upon ESU's allegedly

4

false statements, or that she sustained damage by relying upon those statements." *Id.* Judge James thus concluded that plaintiff had failed "to make a *prima facie* showing that ESU's actions constituted fraud, let alone that its general counsel's communications were made for the purpose of giving advice for the commission of the allegedly fraudulent conduct." *Id.* Also, Judge James declined to review the documents *in camera* to determine if the crime-fraud exception applies. *Id.* at 6–7.

Plaintiff argues that Judge James erred by relying on Kansas law to define the elements fraud. Plaintiff contends that Judge James should have applied federal common law to define fraud. And, she asserts, the definition of fraud under federal common law is broader and encompasses defendants' purported fraudulent conduct here. Thus, she contends, the court should require production of the documents under the crime-fraud exception to privilege. The court disagrees.

Here, plaintiff asserts claims under federal law—*i.e.*, Title VII and § 1983. So the court must apply the federal common law governing attorney client privilege and the crime-fraud exception. *See* Fed. R. Evid. 501; *see also United States v. Zolin*, 491 U.S. 554, 562 (1989). Judge James abided by this principle. She correctly recognized that the federal common law governs the privilege claims here. Doc. 71 at 7, 16–17. And she applied federal common law to define the scope of the privilege and the crime-fraud exception. *Id.* at 4–5.

Judge James then determined that plaintiff's allegations failed to make a *prima facie* showing of fraud to invoke the crime-fraud exception. Judge James cited Kansas law when she identified the elements of fraud. Doc. 71 at 5. This approach makes sense because, to determine whether the facts establish a *prima facie* showing that defendant had committed a crime or fraud sufficient to support the crime-fraud exception under federal common law, the court may apply

the forum's law governing the alleged crime or fraud.  *See*, *e.g.*, *Madanes v. Madanes*, 199

F.R.D. 135, 143, 148 (S.D.N.Y. 2001) (applying the crime-fraud exception in a federal question

case and reciting the elements of common law fraud in New York:  "At common law, fraud

consists of an intentional and material misrepresentation that is reasonably relied upon by the

plaintiff and causes the plaintiff damage." (citations omitted)).

But plaintiff's criticism misses the broader point.  Even if Judge James had erred by using

Kansas law as a point of reference, federal common law defines fraud using the same elements

as Kansas law.[2]  *Pence v. United States*, 316 U.S. 332, 338 (1942) (explaining that "all the

necessary elements of the defense of fraud, established by our decisions [are]:  (1) a false

representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and

with the intent to deceive (5) with action taken in reliance upon the representation." (citations

omitted)); *Marcus v. AT&T Corp.*, 138 F.3d 46, 63 (2d Cir. 1998) ("In order to state a claim for

fraud under federal or New York state common law a plaintiff must allege that the defendant

made a material false representation, that the defendant knew of the falsity (scienter), that the

defendant acted with intent to defraud, that the plaintiff reasonably relied on the false

representation, and damages." (citing *Pence*, 316 U.S. at 338) (further citations omitted)); *Alicke

v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (citing *Pence* as defining the

elements of federal common law fraud and stating:  "A claim for common law fraud or negligent

misrepresentation requires, among other things, an allegation that the plaintiff acted in reliance

upon the alleged misrepresentation" (citing *Pence*, 316 U.S. at 338)).

---

[2]        Plaintiff asserts that federal common law fraud is "much broader in scope" than Kansas's definition of the
tort.  Doc. 73 at 6.  But she provides no binding legal authority for this assertion.  Instead, she cites comments from
pattern jury instructions used outside the Tenth Circuit that describe fraud, generally.  *Id.*  Defendants never
responded to plaintiff's Objection.  So they have not supplied a definition of federal common law fraud.  The court's
own research has revealed the above-definition of common law fraud as the one supplied by federal common law.

Judge James thoroughly explained why plaintiff had failed to make a *prima facie* showing that defendants committed fraud for purposes of applying the crime-fraud exception. Simply, plaintiff alleged no facts showing that defendants' false statements were ones of *material* fact made for the purposes of *inducing* plaintiff to act on them. Also, plaintiff never alleged any facts showing that she *reasonably relied* on defendants' allegedly false statements and that her *reliance* on the statements caused her to sustain damage.[3] Thus, Judge James correctly ruled that plaintiff had failed to make a *prima facie* showing of fraud as required by the federal common law governing the crime-fraud exception. Also, exercising her sound discretion, Judge James determined correctly that *in camera* examination of the documents to assess whether the crime-fraud exception applies was unnecessary because plaintiff never made a sufficient showing "of a factual basis adequate to support a good faith belief by a reasonable person" that the crime-fraud exception applies. *Zolin*, 491 U.S. 572.

The court also affirms Judge James's ruling for yet another reason. Plaintiff has come forward with no "*prima facie* evidence that the allegation of attorney participation in a crime or fraud has some foundation in fact." *Motley*, 71 F.3d at 1551. Although the Tenth Circuit has not defined the precise contours of this *prima facie* showing, other Circuits have held that the crime-fraud exception requires "more than 'speculation [or] evidence that shows only a distant likelihood of corruption." *United States v. Gorski*, 807 F.3d 451, 460 (1st Cir. 2015) (citations and internal quotation marks omitted); *see also In re Grand Jury*, 705 F.3d 133, 153 (3d Cir. 2012) ("[N]either speculation nor evidence that shows only a distant likelihood of corruption is enough" to establish the crime-fraud exception to the attorney-client privilege).

---

[3]     Plaintiff contends that defendants' statements damaged her name and reputation. That allegation will not suffice to support the damage element of fraud. To make a *prima facie* showing of fraud, plaintiff must allege that her *reliance* on defendants' false statements—and not merely defendants' statements themselves—caused her damage.

Plaintiff relies on her own opinion and the opinions of third-parties to argue that ESU's investigation was fraudulent.  But these opinions merely disagree with the outcome of the investigation.  They don't establish fraud.  *Compare Motley*, 71 F.3d at 1551 (holding that district court did not abuse its discretion when it concluded that plaintiff had not made the *prima facie* showing required to invoke the crime-fraud exception because plaintiff "at most offered some evidence of race-based decisions" made by defendant in carrying out a reduction-in-force but "offered no evidence that the two documents in issue were prepared in furtherance of a crime or fraud") *with Burton v. R.J. Reynolds Tobacco Co.*, 167 F.R.D. 134, 142–43 (D. Kan. 1996) (Lungstrum, J.) (holding that "plaintiff [had] carried his burden to make out a prima facie case of fraud based on" statements taken from third-party documents, including ones issued by the Food and Drug Administration, that conflicted with a statement by the Tobacco Industry Research Council that the industry believed that nicotine was not addictive).

For all these reasons, the court concludes that Judge James's decision, declining to apply the crime-fraud exception to the attorney-client privilege asserted here, was not clearly erroneous or contrary to law.

## III.     Conclusion

For reasons explained above, the court concludes that Judge James's ruling was not clearly erroneous or contrary to law.  The court thus denies plaintiff's Objection to Judge James's Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's "Objections to the Order of February 20, 2018" (Doc. 73) is denied and plaintiff's objections to Magistrate Judge James's February 20, 2018 Order (Doc. 71) are overruled.

**IT IS SO ORDERED.**

8

Dated this 3rd day of April, 2018, at Topeka, Kansas.

<u>s/ Daniel D. Crabtree</u>
Daniel D. Crabtree
United States District Judge