# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANGELICA HALE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Case No. 16-4182-DDC |
| | ) |
| EMPORIA STATE UNIVERSITY (ESU), | ) |
| GWEN ALEXANDER, PH.D., | ) |
| DAVID CORDLE, PH.D., | ) |
| JACKIE VIETTI, PH.D., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Gwen Alexander, Ph.D., David Cordle, Ph.D., Jackie Vietti, Ph.D., and Emporia State University ("ESU") submit this memorandum, pursuant to F.R.Civ. P. 56 and D.Kan Rule 6.7, in support of their motion for judgment as a matter of law.

### Nature and Summary of the Case

Plaintiff brings this suit pursuant to Title VII and 42 U.S.C. § 1983. Plaintiff began employment with ESU in July, 2014, through a term appointment made by Dean Alexander. Plaintiff remained in this limited appointment through the 2014-15 school year. Through its normal processes, ESU advised Plaintiff that her employment as an administrative assistant in the School of Information and Library Sciences ("SLIM") would be terminated when her current contract expired on August 15, 2015. Plaintiff alleges that this notice to terminate her was a materially adverse action, and was retaliation for her engagement in protected activity. Plaintiff's

protected activity was alleged to have occurred on April 8, 2015 when she reported an incident involving a graduate student finding a vulgar epithet written in one of her notebooks.

In addition to her Title VII retaliation claim, Plaintiff also asserts a claim under 42 U.S.C. § 1983 for First Amendment retaliation against Defendants Alexander, Cordle, and Vietti for their alleged involvement in eliminating Plaintiff's temporary staff position.

Contrary to Plaintiff's apparent beliefs regarding some grand conspiracy against her and her husband, Angelica Hale ("Angelica")[1] was initially well thought of by her colleagues and praised often by her supervisor, Dean Alexander. While Angelica was generally liked, it wasn't long before Plaintiff's husband, Melvin Hale, a newly minted ESU professor, brought hate and hostility to the department by bullying secretaries, staff, and even students. Melvin Hale made SLIM unbearable with his attacks on colleagues and subordinates alike, and often using Angelica as both a target and shield for his bad behavior. Angelica got caught up in Melvin's designs, and began to share his particular fixation as to Debra Rittgers, a SLIM staff member, and Dean Alexander – despite Alexander being the driving force behind hiring both Hales, and the first to offer Melvin, the brand new Ph.D., a teaching job after he graduated in 2014.

Plaintiff's two claims are narrow in time, scope, and the material facts are limited at best. To that end, the event Plaintiff "opposed" and the basis of her Complaint occurred on April 8, 2015 when a student supposedly discovered the word, "NIGGAZ" scribbled on one of her notebooks.

On July 27, 2015, Angelica quit without notice by sending out a campus email (excluding Dean Alexander and Debra Rittgers) stating that the ugly word scribbled in a graduate student's

---

[1] Plaintiff Angelica Hale and her husband, Melvin Hale both worked in SLIM, with Mr. Hale being directly involved in many of the incidents at issue. For purposes of avoiding confusion, Plaintiff and her husband will be referred to by their first names throughout this brief.

personal notebook (in April) had amounted to "a heinous act clearly meant to intimidate and insult both me and my husband."

It is unknown whether Angelica would have actually been terminated on August 15 as originally planned. However, while the State's financial picture was particularly bleak at that time, with a complete shutdown of State government looming and furloughs a serious concern, it's quite possible that once that crisis had subsided, Angelica could have either remained where she was or perhaps elsewhere within the ESU system. Regardless, ESU did not terminate Plaintiff, nor did it take any other materially adverse action as to Plaintiff. ESU did not retaliate against Plaintiff and is entitled to judgment as a matter of law. Furthermore, Plaintiff's claim against the three individual defendants must fail because each is entitled to qualified immunity, and Plaintiff has wholly failed to show how each individual, standing alone, personally retaliated against Plaintiff in violation of her First Amendment rights.

**STATEMENT OF UNCONTROVERTED FACTS**

[See Attached]

**ARGUMENT AND AUTHORITIES**

I. **Summary Judgment Standard**

Summary judgment is required if the moving party demonstrates that "no genuine dispute" about "any material fact" exists and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahomo-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'genuine' 'if the evidence is such that a reasonably jury could return a verdict for the non-moving party' on the issue." *Id* (quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.*

For the moving party to meet its burden, it "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

## II. Title VII Framework.

In the pretrial order, Plaintiff asserts a retaliation claim against ESU, alleging that she was retaliated against because she engaged in activities protected by Title VII. (ECF 78, page 13.) Title VII prohibits employers from retaliating against employees that oppose discrimination. *See* 42 U.S.C. § 2000e-3(a). When a plaintiff lacks direct evidence of retaliation, as is the case here, "the court assesses retaliation claims under the *McDonnell Douglas* burden-shifting framework." *Daniels v. United Parcel Serv., Inc.*, 797 F. Supp. 2d 1163, 1192 (D. Kan. 2011), *aff'd*, 701 F.3d 620 (10th Cir. 2012). Fist, a plaintiff must establish a prima facie case of retaliation. *Id.* at 1193. Under Title VII, a prima facie case of retaliation requires the plaintiff to establish the following elements: "(1) the employer engaged in protected opposition to discrimination; (2) the employee suffered an adverse employment action during or after his protected opposition that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action." *Id.*

Only if a plaintiff establishes her prima facie case of retaliation will the burden shift to the employer "to articulate a legitimate nondiscriminatory reason for the adverse employment

decision." *Id.* "From there, the burden returns to plaintiff to show that the stated reason is pretextual." *Id.*

In this case, there are multiple deficiencies in regard to the Plaintiff's Title VII claim for retaliation. First, Plaintiff is restricted to the time period that she alleged at issue in her charge of discrimination with the EEOC and much of what she complains about falls outside that timeframe and is therefore unexhausted. Second, Plaintiff did not engage in activity protected by Title VII for multiple reasons, any one of which defeats her Title VII prima facie case. Third, the only adverse employment action that arguably occurred was the non-renewal of Plaintiff's contract—an investigation and/or a failure to investigate do not constitute adverse employment actions. Fourth, Plaintiff cannot establish a causal connection between the non-renewal of her contract and any opposition to protected activity.

Even if the Plaintiff can establish a prima facie case of retaliation, the non-renewal of her contract was purely related to budgetary issues impacting the university following the near-furlough of many employees in June 2015 and the fact that she should have never been hired into a position that she was not qualified for in SLIM. Plaintiff cannot show that such proffered reasons are pretextual. Accordingly, Defendant ESU is entitled to summary judgment on Plaintiff's Title VII claim for retaliation.

**III.     Plaintiff Failed to Exhaust her Administrative Remedies Regarding Incidents Prior to April 8, 2015, and after August 15, 2015.**

In the Pretrial Order, Plaintiff makes a vague reference to experiencing racially motivated micro-aggressions against her and her husband Melvin Hale after arriving at SLIM in 2014. (ECF 78, pages 3-4.) She further alleges that "[i]n December 2014, Dr. Hale demanded that Dean Alexander move Angelica . . . from the office she was sharing with Debra on the third floor to another office." (ECF 78, page 4.) There is no further elaboration on what constituted these

alleged micro-aggressions by Debra Rittgers or why Angelica needed to move offices. Instead, Plaintiff moves directly on to the April 8, 2015, incident with the graduate student. (ECF 78, page 4.)

Notably, any allegations of protected opposition to discrimination from prior to April 8, 2015, are completely absent from the charge that Plaintiff filed with the EEOC and KHRC. Plaintiff's EEOC charge of discrimination references the charge she filed with the KHRC. Specifically, the KHRC charge alleges the following facts:

A. On April 8, 2015, I was subjected to derogatory racial names that were written on notepads. However, on this same date, I complained of the derogatory racial names to the Dean, but nothing was done about it.

B. On August 15, 2015, I was terminated, in that I was notified that my contract was not being renewed.

Plaintiff never mentions anything about racially motivated micro-aggressions, moving offices in December 2014, or any other alleged discrimination or retaliation prior to the April 8, 2015 incident.

Title VII requires a plaintiff to exhaust her administrative remedies prior to bringing a federal lawsuit. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (citing cases). In the Tenth Circuit, such a requirement is jurisdictional as opposed to a mere condition precedent. *Id.* (citing *Jones v. Runyon*, 91 F.3d 1398, 1399 n.1 (10th Cir. 1006)). While the jurisdictional nature of this requirement has been evaluated and questioned in Tenth Circuit dicta, it has not been overruled by the Tenth Circuit sitting *en banc* or by any contrary Supreme Court decision. *See Moreno v. Kansas City Steak Co., LLC*, No. 17-CV-02029-DDC-KGS, 2017 WL 2985748, at *3 (D. Kan. July 13, 2017) (explaining *Shikles* remains binding precedent).

Proper exhaustion serves two purposes: "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim." *Jones v. U.P.S.,*

*Inc.*, 502 F.3d 1176, 1185 (10th Cir. 2007) (citation omitted). In order to serve these goals, the charge "must contain the general facts concerning the discriminatory actions later alleged in the legal claim." *Jones v. Needham*, 856 F.3d 1284, 1290 (10th Cir. 2017) (citing *Jones*, 502 F.3d at 1186).

In determining whether a plaintiff exhausted her Title VII claim, the court first inquires whether a charge has been filed with the EEOC. *Moreno*, 2017 WL 2985748, at *3 (citing *Jones*, 502 F.3d at 1183). Second, the court must "determine the scope of the allegations raised in the EEOC charge because [a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'" *Id.* (quoting *Jones*, 502 F.3d at 1186). In evaluating step two, the court liberally construes the EEOC charge. *Id.* However, the charge "must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that 'each discrete incident' of alleged discrimination or retaliation 'constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted.'" *Id.* (quoting *Jones*, 502 F.3d at 1186).

Defendant ESU does not dispute that Plaintiff filed a charge with the EEOC by availing herself of the dual-filing system with the KHRC. However, Defendant ESU does take issue with the second step outlined above, namely that Plaintiff's claim in federal court has expanded beyond the original scope of her EEOC charge.

Specifically, Plaintiff never made any reference in the EEOC charge to any discrimination or retaliation that occurred prior to April 8, 2015. There is no mention of the alleged micro-aggressions or a December 2014 incident that required moving offices. *See id.* Such an exclusion prevented proper notice to ESU, as the charged party, and deprived the EEOC of any conciliatory

action on those issues. Besides, vague references to micro-aggressions and moving offices hardly relates to the April 8, 2015 incident, when it is unclear on the face of Plaintiff's allegations in the Pretrial Order who the players were, what happened, when exactly they happened, and what retaliation occurred as a result therefrom. Plaintiff is beyond the mere pleading stage of this litigation, and "'purely conclusory allegations of discrimination' which are devoid of 'concrete particulars' are not sufficient to avoid summary judgment." *Sifuentes v. United Parcel Serv., Inc.*, No. 10-2178-RDR, 2012 WL 5907385, at *1 (D. Kan. Nov. 26, 2012) (quoting *Pucino v. Verizon Wireless Communications, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010)). Further, the Pretrial Order supersedes any previous pleadings in the case. (ECF 78, page 1 (citing Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(b)). Considering any such allegations were entirely omitted from the EEOC charge, even a vague reference, they are not related to the discrete incident that Plaintiff complained of in her charge. Therefore, any factual allegations or legal theories of recovery from occurrences prior to April 8, 2015, are unexhausted and this Court lacks subject matter jurisdiction over them.

Relatedly, Plaintiff spends much of the Pretrial Order complaining of events that appear to have occurred after she knewf notice that her contract would not be renewed in early July 2015 and after she resigned from her position on July 27, 2015, in an "Open Letter to Dean Alexander." (ECF 78, pages 6-12.) Much of these allegations have to do with the investigation and the subsequent findings made by Defendant ESU. *See id.* Despite the fact that Plaintiff did not file her charge until September 22, 2015, she makes no mention of any of these allegations regarding these post-employment actions. For the same reasons identified above, these allegations are similarly unexhausted, as the EEOC was deprived of notice and an attempt to conciliate any alleged

retaliation occurring after Plaintiff's resignation. In sum, summary judgment is warranted on all allegations that were not identified in Plaintiff's EEOC charge for failure to exhaust.

### IV. Plaintiff Cannot Establish a Prima Facie Case of Retaliation.

#### a. Plaintiff did not engage in protected opposition to discrimination.

The first *McDonnell Douglas* prong requires the plaintiff to show that she "engaged in protected opposition to discrimination." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). Title VII's retaliation provisions states, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The former portion of the anti-retaliation provision has been referred to as the "opposition clause," while the latter has been termed the "participation clause." *See Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274, 129 S. Ct. 846, 850, 172 L. Ed. 2d 650 (2009). Given the timing of Plaintiff's allegations, she appears to be invoking the opposition clause, as she did not file a formal charge with the EEOC until September 22, 2015, and refused to file a grievance with ESU. (ECF 78, pages 3-12)

In order to establish that she was engaged in statutorily protected activity, Plaintiff "must show that [s]he had a reasonable, good faith belief that [s]he was opposing discrimination prohibited by Title VII." *Held v. Ferrellgas, Inc.*, 505 F. App'x 687, 689 (10th Cir. 2012) (citing *Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003)). A plaintiff does not need to establish that she was actually discriminated against, but must show a reasonable, good faith belief that she reported conduct prohibited by Title VII. *Id.* (citing *Hertz v. Luzenac Am.,*

*Inc.*, 370 F.3d 1014, 1015-16 (10th Cir. 2004)).  The court looks to the "underlying substantive law" to determine whether a reasonable person in Plaintiff's situation could have believed she was opposing conduct prohibited by Title VII.  *Id.* (citing *Clark Cnty. Sch. Dist. v. Breedon*, 532 U.S. 268, 271 (2001)).

As an initial matter, Plaintiff does not even begin to clarify what unlawful employment practice she opposed.  According to the Plaintiff, a graduate student approached her and disclosed that she found the word "NIGGAZ" written on her notepad by an unknown individual.  (ECF 78, page 4.)  She texted her husband, who was in a faculty meeting, about the incident and he spoke with Dean Alexander.  (ECF 78, page 4.)  Plaintiff joined the meeting shortly thereafter.  (ECF 78, page 4.)  Plaintiff and her husband requested that Dean Alexander "follow up with *Brenda* and take action on investigating the incident."  (ECF 78, page 5 (emphasis added)).

Plaintiff then generally claims that no action was taken for two months, and that she and her husband "reported the matter to the Emporia State University Provost, Dr. Cordle, and others in the administration."  (ECF 78, page 5.)  She also indicates they made the same report to the ESU Police Department.  (ECF 78, page 5.)  She alleges that "Emporia State University officials and Lyon County Attorney Marc Goodman flatly refused to take any concrete actions to investigate the incident" and that they "refused to characterize the slur as a hate crime, or as a manifestation of hate speech . . . ."  (ECF 78, page 5.)  Accordingly, there appears to be two distinct timeframes of when Plaintiff allegedly "opposed" conduct prohibited by Title VII—(1) her initial report to Dean Alexander on April 8, 2015; and (2) her and her husband's reports to ESU officials and police in June/July 2015.  (ECF 78, pages 4-5.)

But nowhere in the Pretrial Order does Plaintiff clarify what exactly about the April 8, 2015, incident amounts to an unlawful employment practice prohibited by Title VII. An "unlawful employment practice" is defined as follows:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). The United States Supreme Court has made clear that Title VII also prohibits hostile work environments. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117 (internal citation omitted).

Given the context of Plaintiff's allegations, the only logical interpretation is that she allegedly opposed a racially hostile work environment. As noted above, the court looks to the underlying substantive law in determining whether the plaintiff had a reasonable, good faith belief that she opposed conduct prohibited by Title VII, i.e., a racially hostile work environment. *Held*, 505 F. App'x at 689. A hostile work environment has been defined as one "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Nat'l R.R. Passenger Corp.*, 510 U.S. at 116 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

No reasonable jury could find that Plaintiff had a reasonable, good faith belief that she opposed any unlawful employment practice prohibited by Title VII. To begin, Plaintiff's original complaint to Dean Alexander, as self-described in the Pretrial Order, references following up with Brenda and makes no suggestion that the racial epithet was directed at her or her husband. At this point, there was no unlawful employment practice on the part of the *employer*. *See Faragalla v.*

*Douglas Cty. Sch. Dist. RE 1*, 411 F. App'x 140, 152 (10th Cir. 2011) (explaining that "an employee must establish a basis for employer liability for the conduct of its employees that creates a hostile work environment"); *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1139 (10th Cir. 2008) ("[W]e note that employers are not automatically liable under Title VII for the conduct of employees that creates a hostile work environment."). Plaintiff admits that she (and Brenda) did not know who wrote the word much less that it was an employee.

Furthermore, Plaintiff and her husband's subsequent follow-up with ESU personnel demonstrates as a matter of law that Plaintiff did not exercise a reasonable, good faith belief that she opposed a racially hostile work environment. On June 16, 2015, Plaintiff's husband e-mailed Dean Alexander in correspondence entitled "Hostile Environment – Workplace Harassment." He accused her of failing "to take incidents of workplace harassment seriously, and have allowed Angelica and I to be called NIGGAZ without following through on your fiduciary responsibility to address the seriously violations of our civil rights . . . ." On July 2, 2015, Melvin Hale e-mailed multiple ESU officials in an e-mail entitled "Lack of Action on Hate Crime" and pushed for the university to consider Deb Rittgers as the most likely suspect based on a handwriting analysis performed by Wendy Carlson.

It was not reasonable to believe that the word "NIGGAZ," written on a white, graduate student's notebook amounted to the kind of severe or pervasive discriminatory intimidation, ridicule, and insult prohibited by Title VII. Plaintiff admits that she did not know who wrote the word when it was discovered by Brenda in Brenda's office (not the Plaintiff's office). Yet two months later she and her husband accused Dean Alexander of allowing for the Hales to be called a racial epithet. It is patently unreasonable to go from reporting the word to be found in Brenda's office and for the Dean to follow up with Brenda, then to turn around two months later and state

that it was directed at the Hales.  Plaintiff cannot come forward with any evidence that establishes it was reasonable to believe the word was directed at her or her husband, or both, when it was not found by them, written on their materials, or located in their personal workspace.  *Compare Tademy*, 614 F.3d at 1145 ("[I]t is difficult to imagine a message more calculated to make an African-American feel unwelcome in the workplace than 'nigger' engraved in his or her individual workspace.").  Relatedly, it shows a lack of good faith.  Plaintiff and her husband changed the story to fit their agenda without explanation.

At the motion to dismiss stage, this Court considered Plaintiff's allegations of additional reporting of race-based harassment.  But in order for this to be considered as part of the "opposition" to conduct prohibited by Title VII, "the harassment must be based on the plaintiff's protected class or stem from discriminatory animus toward her protected class."  *Faragalla v. Douglas Cty. Sch. Dist. RE 1*, 411 F. App'x 140, 152 (10th Cir. 2011) (internal citation omitted).

A hostile work environment/racial harassment is the only possible characterization of the conduct Plaintiff "opposed."  Her original complaint to Dean Alexander, as self-described in the Pretrial Order, references following up with Brenda and makes no suggestion that the racial epithet was directed at her or her husband.  Two months later, the complaint made by her husband escalated to a violation of their civil rights, retaliation, and was directed at them.  Plaintiff's claim for Title VII retaliation is unsupported and contrary to law.  As a result, Defendant ESU is entitled to judgment as a matter of law.

**V.   Plaintiff Cannot Establish that Any Individual Defendant Retaliated Against Her for Any Alleged First Amendment Protected Speech.**

There are no allegations in the Pretrial Order (ECF 78) that provide a basis upon which a reasonable jury could conclude that any individual defendant, standing alone, took any action against Plaintiff based on her purported First Amendment protected speech.  Plaintiff provides a

dearth of general gripes about how she subjectively felt picked-on or alternatively, ignored, following the April 8th incident and while she was still employed (i.e. prior to July 27, 2015). Plaintiff asserts a claim under 42 U.S.C. § 1983 against each individual defendant asserting that they retaliated against her for exercising her First Amendment free-speech rights. The individual defendants assert that they are entitled to summary judgment on this claim based on qualified immunity. Qaulified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Thomas v. Durastanti*, 607 F.3d 655, 661 (10th Cir. 2010). When a defendant asserts qualified immunity at summary judgment, the "burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. *Courtney v. Oklahoma ex re. Dep't of Public Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013).

Nothing in the Pretrial Order (ECF 78) advances or supports Plaintiff's claim as to each individual Defendant's alleged violation of her constitutional right. As the burden rests with Plaintiff, having asserted a qualified immunity defense, Plaintiff must now present admissible evidence to advance her case any further. There simply is none. For purposes of this claim, defendants restate arguments raised previously in ECF 18 and 25.

## VI. Conclusion

Based on the above and foregoing arguments and authorities, Defendants submit that they are entitled to Summary Judgment on all of Plaintiff's claims.

Respectfully submitted,
OFFICE OF THE ATTORNEY GENERAL
DEREK SCHMIDT

s/ Carrie A. Barney
Carrie A. Barney, KS #22872
Assistant Attorney General/Trial Counsel

Rachael D. Longhofer, KS #25451
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas, 66612-1597
Phone: (785) 368-6695
   (785) 368-8420
Fax:  (785) 291-3767
Email: carrie.barney@ag.ks.gov
   rachael.longhofer@ag.ks.gov
*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May, 2018, I electronically filed the foregoing with the Court using the CM/ECF system, and a notice of electronic filing was sent via the CM/ECF system to all counsel of record and to Plaintiff Angelica Hale, a registered pro se participant who receives electronic notification in the case, at angelicahale@yahoo.com.

s/ Carrie A. Barney
Carrie A. Barney