# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANGELICA HALE,

       Plaintiff,

vs.

                                **Case No. 16-4182-DDC-TJJ**

EMPORIA STATE UNIVERSITY,
GWEN ALEXANDER,
DAVID CORDLE, and
JACKIE VIETTI,

       Defendants.

## MEMORANDUM AND ORDER

Plaintiff Angelica Hale is a former employee of Emporia State University ("ESU").

Plaintiff brings this action pro se[1] against defendants ESU, Gwen Alexander, David Cordle, and

Jackie Vietti. Plaintiff asserts a Title VII retaliation claim against ESU, alleging that ESU

terminated her employment as retaliation for complaining about racial discrimination. Also,

plaintiff asserts a First Amendment retaliation claim under 42 U.S.C. § 1983 against defendants

Alexander, Cordle, and Vietti because, plaintiff contends, these three individuals retaliated

against her after she exercised her right to speak out against discrimination and racism.

       This matter comes before the court on the parties' cross motions for summary judgment.

Plaintiff has filed a Motion for Summary Judgment. Doc. 85. Her motion asks the court to enter

summary judgment in her favor on her Title VII and § 1983 claims. Defendants have filed a

---

[1]      Because plaintiff proceeds pro se, the court construes her pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe a pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But the court does not assume the role of advocate for a pro se litigant by constructing arguments or searching the record. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Response, opposing plaintiff's summary judgment motion. Doc. 109. And plaintiff has filed a Reply. Doc. 116.

Defendants also have filed a Motion for Summary Judgment. Doc. 106. Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment. Doc. 113. And defendants filed a Reply. Doc. 118.

The motions thus are fully briefed, and the court is prepared to rule. For reasons explained below, the court grants defendants' Motion for Summary Judgment in part and denies it in part. The court denies summary judgment against plaintiff's Title VII claim but grants summary judgment against her § 1983 claim. Also, the court denies plaintiff's Motion for Summary Judgment. The court explains why, below.

## I.        Defendants' Failure to Controvert Plaintiff's Statements of Fact

Before reciting the uncontroverted facts that govern these summary judgment motions, the court describes how defendants have failed to controvert plaintiff's asserted statements of fact in the fashion required by this court's local rules. The pro se plaintiff has filed a Motion for Summary Judgment containing 55 separately numbered statements of fact. Doc. 86-3 at 11–25; Doc. 86-5 at 11–25. Each of plaintiff's facts cites the specific portion of the summary judgment record she relies on to support the fact. *Id.* By doing so, plaintiff has complied with our local summary judgment rules that require a party moving for summary judgment to provide a "concise statement of material facts as to which the movant contends no genuine issue exists" that are "numbered and . . . refer with particularity to those portions of the record upon which movant relies." D. Kan. Rule 56.1(a). Also, D. Kan. Rule 56.1(a) provides: "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."

2

Defendants' Response to Plaintiff's Motion for Summary Judgment never controverts any of plaintiff's facts specifically. Instead, defendants simply assert: "By Plaintiff's own admission, her 'Statement of Material Undisputed Facts' are a blending of her arguments and her facts. As such, the court should disregard Plaintiff's confused version of what the documents expressly state." Doc. 109 at 3. Defendants' conclusory response does not comply with our local rules. These rules require a party opposing summary judgment to controvert specifically the movant's statements of material fact. *See* D. Kan. Rule 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party"); *see also* D. Kan. Rule 56.1(b)(1) ("A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.").

Because defendants have not complied with our rules, the court accepts as true plaintiff's material facts, but only if the summary judgment record properly supports those facts. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (explaining that when a party opposing summary judgment waives its right to respond or controvert the facts asserted in the moving party's summary judgment motion, the court "should accept as true all material facts properly asserted and properly supported in the summary judgment motion"). And indeed here, plaintiff supports most of her asserted statements of fact with her own Declaration. Doc. 86-1. Section 1746 of Title 28 of the United States Code governs the admissibility of declarations. For a declaration to be admissible under § 1746, the declarant must "subscribe[ ]" that the statement is

true under penalty of perjury with language substantially similar to the following statement: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct," followed by a date and a signature. 28 U.S.C. § 1746. Plaintiff's Declaration recites: "I declare under penalty of perjury, pursuant to the laws of the State of California and the United States of America, that the foregoing is true and correct. This Declaration was executed on April 2, 2018 in Palm Springs, California." Doc. 86-1 at 10. After this statement, plaintiff again provides the date of execution and her electronic signature. In short, plaintiff's Declaration complies with § 1746. And the facts asserted in that Declaration—to the extent plaintiff bases the facts on her personal knowledge—are admissible on summary judgment. Because defendants never controvert any of those facts, the court accepts them as true on summary judgment.

Also, in response to defendants' Motion for Summary Judgment, plaintiff filed a Statement of Additional Facts. Doc. 115. Plaintiff's Statement of Additional Facts contains 44 separately numbered paragraphs with citations to the portions of the summary judgment record she relies on to support the facts. *Id.* By doing so, plaintiff again complied with our local summary judgment rules governing a memorandum opposing summary judgment. D. Kan. Rule 56.1(b)(2) provides: "If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above." Also, this same subsection of Rule 56.1 provides: "All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party." D. Kan. Rule 56.1(b)(2).

Defendants' four-page Reply does not controvert any of plaintiff's 44 additional statements of fact. *See* Doc. 118. Defendants' Reply briefly references two of the exhibits that plaintiff submitted with her Response opposing defendants' summary judgment motion. *See* Doc. 118 at 2. And defendants assert—but just as a conclusion—that the exhibits don't present any "material facts at issue." *Id.* But defendants' Reply never controverts any of plaintiff's additional statements of fact specifically in the manner required by our local rules. *See* D. Kan. Rule 56.1(b)(2) ("All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party."); *see also* D. Kan. Rule 56.1(c) ("In a reply brief, the moving party must respond to the non-moving party's statement of additional material facts in the manner prescribed in subsection (b)(1).").

In sum, because defendants have failed to controvert plaintiff's additional statement of facts specifically as our local rules require, the court also accepts as true plaintiff's additional statement of facts, but only if the summary judgment record properly supports those facts. *Reed*, 312 F.3d at 1195.

## II. Uncontroverted Facts

The following facts are stipulated by the parties in the Pretrial Order (Doc. 78), or are uncontroverted for purposes of the parties' summary judgment motions.

In May 2014, ESU offered plaintiff's husband—Melvin Hale—a tenure-track position as an assistant professor in ESU's School of Library and Information Management ("SLIM"). On May 17, 2014, Gwen Alexander—ESU's Dean of the SLIM—sent an email to Dr. Hale with an offer letter. The letter recited that ESU was looking forward to welcoming Dr. Hale to the school. Dr. Hale began his employment with ESU in July 2014. Also in July 2014, plaintiff

accepted a position at ESU as an administrative assistant to Dean Alexander.[2]  Plaintiff is an

African-American female.

On April 8, 2015, a graduate assistant named Brenda Rahmoeller arrived at work to find

her office door unlocked, and she discovered the word "NIGGAZ" written in a personal

notebook located in her office.  She reported what she had found to plaintiff.  Plaintiff took a

photograph of the racial epithet on her cell phone.  She then sent a text message to her

husband—Dr. Hale—informing him of the incident and enclosing a picture of the racial epithet.

When Dr. Hale received the text message, he was in a faculty meeting with Dean Alexander and

others.  After the meeting, Dr. Hale went with Dean Alexander to Dean Alexander's office and

informed her of the report that the graduate student had made to plaintiff.  Plaintiff then joined

the meeting with Dr. Hale and Dean Alexander, and she reported what she had seen in the

graduate student's office.  Plaintiff and her husband asked Dean Alexander to follow up with the

student and investigate the incident.

In April 2015, Debra Rittgers was employed by ESU as the office manager for SLIM.

On Friday, June 5, 2015, Dean Alexander emailed a group of SLIM employees informing them

that a furlough may begin on Sunday.  The email provided:  "If a furlough happens, Deb

Rittgers, [plaintiff], and I are all non-essential and will be on the furloughed list."  Doc. 107-2 at

22.[3]  Also on June 5, 2015, Dean Alexander sent an email to plaintiff and others advising them of

---

[2]      Plaintiff tries to the controvert this fact, asserting that her title was Recruitment Coordinator.
Doc. 114 at 2 (Pl.'s Resp. to Defs.' Statement of Facts ¶ 2).  But the exhibit she cites—defendants'
Exhibit B—doesn't support her assertion.  Also, the parties stipulated to the following fact in the Pretrial
Order:  "On July 1, 2014, [plaintiff] began employment with ESU as an Assistant to the Dean of School
of Library and Information Management ('SLIM')."  Doc. 78 at 3 (Pretrial Order ¶ 2.a.6.).  And
plaintiff's Complaint alleges that ESU hired her as an Assistant to the Dean of SLIM on July 1, 2014.
Doc. 1 at 3 (Compl. ¶ 12).

[3]      Plaintiff disputes this fact because, she contends, the exhibit defendants cite to support the fact is
"not attached to the filing."  Doc. 114 at 4.  The exhibit (Exhibit N) is found at Doc. 107-2 at 22, as cited.
Plaintiff never disputes whether defendants have established the proper foundation for this exhibit.  But,

the possibility of furlough, that they are considered non-essential employees, and that "[a] furlough, or mandatory leave without pay, would begin on Sunday, June 7, until further notice . . . ." Doc. 107-2 at 23.[4]  But, on June 6, 2015, ESU Interim President Jackie Vietti announced that ESU would not implement any furlough for employees.  Doc. 113 at 153.

After reporting the incident to Dean Alexander on April 8, plaintiff asked the graduate student every day if Dean Alexander had followed up with her yet to address the incident.  The graduate student repeatedly informed plaintiff that she had heard nothing from Dean Alexander. Several weeks later, the graduate student reported to plaintiff that Dean Alexander, on June 7, finally had asked her about the incident.  This inquiry came more than two months after the graduate student had discovered the racial epithet.

Also, plaintiff spoke with Dr. Mirah Dow[5] about the incident sometime after plaintiff had reported the racial epithet to Dean Alexander.  During this conversation, plaintiff expressed her concerns to Dr. Dow that Dean Alexander had not followed up with the graduate student to investigate the matter.

A few weeks after the incident involving Ms. Rahmoeller, plaintiff retrieved a box of printer toner from a supply cabinet at work.  She noticed a handwritten tag on the box, and she

---

as discussed in the analysis section below, the court questions whether it can consider this fact on summary judgment when defendants haven't authenticated the exhibit by any of the means permitted by Fed. R. Evid. 901.  And, for the court to consider this evidence on summary judgment, defendants—as the proponents of the evidence—must establish that the content of the evidence is admissible.  *See Johnson v. Weld Cty. Co.*, 594 F.3d 1202, 1209 (10th Cir. 2010) (explaining that it is "well settled in this circuit" that courts only can consider admissible evidence on summary judgment).

[4]  Plaintiff again disputes this fact, contending that the exhibit defendants cite to support the fact is "not attached to the filing."  Doc. 114 at 4.  The exhibit (Exhibit O) is found at Doc. 107-2 at 23, as cited. Plaintiff never disputes whether defendants have established the proper foundation for this exhibit.  But the court has the same concerns about the foundation for this evidence, as it discussed in n.3 *supra*.

[5]  The Pretrial Order describes Dr. Mirah Dow as "Chair of the faculty for SLIM."  Doc. 78 at 5 (Pretrial Order ¶ 3.a.).

thought it "bore a strong resemblance" to the handwritten racial slur found by the graduate student. Doc. 86-1 at 8 (Angelica Hale Decl. ¶ 30). Plaintiff knew that Debra Rittgers—the office manager—had written the words on the toner box. And so, plaintiff "came to suspect [Ms.] Rittgers as the possible author of the slur." *Id.* After plaintiff developed this suspicion, she hired a forensic examiner to perform a handwriting analysis.

On June 15, 2015, plaintiff's husband sent an email to ESU Provost David Cordle asking to meet with him. He advised the Provost that he wanted to discuss the racial epithet that the graduate student had discovered on April 8. On June 26, 2015, Provost Cordle and Judy Anderson[6] met with plaintiff and her husband about their complaints.[7]

On July 1, 2015, plaintiff's husband sent an email to ESU Interim President Jackie Vietti, copying Provost Cordle and plaintiff. The email advised that plaintiff and her husband had filed a report with ESU police that a hate crime had occurred on April 8, 2015. On July 2, 2015, plaintiff's husband sent another email to Jackie Vietti, copying David Cordle, Dean Alexander, and plaintiff. The email reported that ESU police had declined to file criminal charges against Debra Rittgers for allegedly writing the racial epithet on the graduate student's notebook. But the email recited that plaintiff and her husband would make sure that the matter was not swept under the carpet. According to plaintiff, "[a]ll of the Emporia State University officials and the law enforcement contacted stated that no crime occurred." Doc. 78 at 5 (Pretrial Order ¶ 3.a.).

---

[6]     The parties' summary judgment papers never identify Ms. Anderson's title. Plaintiff's Complaint refers to Ms. Anderson as ESU's Director of Human Resources. Doc. 1 at 7 (Compl. ¶ 54).

[7]     Defendants never cite any summary judgment evidence to support this statement of fact, as D. Kan. Rule 56.1(a) requires. *See* Doc. 108 at 3 (Defs.' Statement of Facts ¶ 21); *see also* D. Kan. Rule 56.1 (requiring a party moving for summary judgment to provide "a concise statement of material facts" that "must be numbered and must refer with particularity to those portions of the record upon which movant relies"). But plaintiff doesn't dispute this fact (*see* Doc. 114 at 5 (Pl.'s Resp. to Defs.' Statement of Facts ¶ 21)). So, the court includes this fact in its recitation of the undisputed summary judgment facts.

On July 6, 2015, Interim President Jackie Vietti sent an email to plaintiff's husband. It included information about how to file an administrative complaint of discrimination so that he and plaintiff could file a complaint. On July 8, 2015, plaintiff's husband sent an email to Dean Alexander. It recited, among other things, that plaintiff's husband did not intend to file a complaint with ESU's Human Resources department. The email does not say anything about plaintiff or her intent to file a complaint.

On July 7, 2015, plaintiff's husband met with Dean Alexander. He again raised concerns about the racial epithet that the graduate student had discovered on April 8. And plaintiff's husband complained to Dean Alexander about his perception that Dean Alexander had failed to take action on his and his wife's complaints about the racial epithet.

On July 8, 2015, plaintiff sent an email to Dean Alexander. This message asked if ESU planned to extend plaintiff's employment contract after it ended on August 15, 2018. Dean Alexander responded, explaining that plaintiff's temporary contract and current employment would end on August 15. Dean Alexander noted that she planned to search for two permanent new positions in the fall or spring, depending on financial circumstances. And Dean Alexander told plaintiff that she was welcome to apply for those positions. Dean Alexander also told plaintiff that she had done a "very good job" in her position and had made a "tremendous contribution to SLIM during the past year." Doc. 86-5 at 183.

Plaintiff asserts in her Declaration that ESU renewed her contract "multiple times" before she complained about discrimination. Doc. 86-1 at 6 (Angelica Hale Decl. ¶ 20). Plaintiff also asserts that, before she complained about discrimination, she received feedback from Dean Alexander that she was "exceeding expectations for [her] work." *Id.* Plaintiff contends that Dean Alexander had talked with her about making her job permanent before plaintiff complained

about discrimination.  Also, Dean Alexander encouraged plaintiff to enroll in classes at ESU to complete a bachelor's degree.  Dean Alexander told plaintiff that having a bachelor's degree would provide plaintiff with more job opportunities at ESU.  In response to Dean Alexander's encouragement, plaintiff enrolled in classes at ESU.  But, after plaintiff stopped working at ESU, she had to drop her enrollment because she no longer qualified for tuition-free enrollment as an ESU employee.

On July 20, 2015, plaintiff and her husband met with Ray Lauber to discuss their concerns about the racial epithet.  Plaintiff identifies Ray Lauber as "HR Assistant Director."  Doc. 78 at 6 (Pretrial Order ¶ 3.a.).

On July 27, 2015, plaintiff sent a letter to Dean Alexander complaining that ESU had "treated" plaintiff and her husband "badly" for reporting a hate crime.  Doc. 46-2 at 5 (Angelica Hale Decl. at ¶ 18); Doc. 47-3 at 6–7 (Pl.'s Ex. V).  Plaintiff's letter also advised that she was "departing now" from her employment.  *Id.*

On September 21, 2015, plaintiff filed a complaint with the Kansas Human Rights Commission.  Her Complaint alleged:

I.      I am African American.  I have openly opposed acts and practices forbidden by the Kansas Act Against Discrimination.

II.     I was employed by the Respondent from July 2014, to August 15, 2015.  I last held the position of Assistant to the Dean/Marketing.
        A. On April 8, 2015, I was subjected to derogatory racial names that were written on notepads.  However, on this same date, I complained of the derogatory racial names to the Dean, but nothing was done about it.
        B. On August 15, 2015, I was terminated, in that I was notified that my contract was not being renewed.

III.    I hereby charge Emporia State University and its Representatives with a violation of the Kansas Act Against Discrimination, in that I was subjected to derogatory racial names due to my race, African American, and terminated as an act of retaliation for having openly opposed acts and practices forbidden by the Kansas Act Against Discrimination.

Doc. 1-2 at 1–2; Doc. 107-2 at 46–47. Defendants assert that August 15, 2015, likely would have been plaintiff's last day of work had she not resigned in July.

### III.    Summary Judgment Standard

Summary judgment is appropriate when the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986);

*Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 670 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

The court applies this same standard to cross motions for summary judgment. Each party bears the burden of establishing that no genuine issue of material fact exists and that it is entitled, as a matter of law, to the judgment sought by its motion. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Cross motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). But where the cross motions overlap, the court may address the legal arguments together. *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## IV.     Analysis

Because the parties' cross motions for summary judgment overlap, the court addresses their legal arguments together. Defendants assert that they are entitled to summary judgment as a matter of law against plaintiff's Title VII and § 1983 claims. Plaintiff contends that she is entitled to summary judgment in her favor on both of her two claims. The court addresses each of those claims, separately, below.

### A.  Plaintiff's Title VII Retaliation Claim Against Defendant ESU

Plaintiff asserts that defendant ESU terminated her employment by refusing to renew her employment contract as retaliation for complaining about racial discrimination. Title VII

12

prohibits an employer from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a retaliatory discharge claim under Title VII, "a plaintiff must establish that the decision to terminate her resulted from retaliatory animus." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549 (10th Cir. 1999). A plaintiff can satisfy this burden in either one of two ways. *Id.*

"Typically, a plaintiff will rely on the familiar framework" of the *McDonnell Douglas* burden-shifting test. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). The *McDonnell Douglas* consists of three parts. First, it requires a plaintiff to establish a prima facie case of retaliation by showing that: "(1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between [her] protected activity and the adverse employment action." *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014) (citing *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011)). "The Supreme Court has recently clarified the causation standard for Title VII retaliation claims, explaining: '[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.'" *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). Next, if plaintiff meets this prima facie burden, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011). And, last, where defendant satisfies this requirement, the burden shifts back to plaintiff to show that defendant's proffered reasons for its actions are pretextual. *Id.* (citing *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006)).

The second means a plaintiff can use to satisfy her burden to establish that her termination resulted from retaliatory animus is by providing direct evidence of retaliation. *Medlock*, 164 F.3d at 550. In that case, "the *McDonnell Douglas* framework is inapplicable." *Id.* (citing *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557–58, 560 (10th Cir. 1996)).

"'Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption.'" *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (quoting *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007)). Our Circuit has explained direct evidence in this fashion: "'Strictly speaking, the only "direct evidence" that a decision was made "because of" an impermissible factor would be an admission by the decisionmaker such as "I fired him because he was too old."'" *Twigg*, 659 F.3d 1000 n.8 (quoting *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 181 (2d Cir. 1992) (quoting *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1185 (2d Cir. 1992))). In contrast, "[e]ven a highly-probative statement like 'You're fired, old man'" is not direct evidence because it "still requires the factfinder to draw the inference that the plaintiff's age had a causal relationship to the decision." *Id.* (quoting *Ostrowski*, 968 F.2d at 181).

As an example, our Circuit has held that a suspension letter and subsequent termination letter provided direct evidence of retaliation because the letters recited that the employer had made its suspension and termination decisions because plaintiff had complained about racial discrimination. *Medlock*, 164 F.3d at 550. In that Tenth Circuit case, the suspension letter recited: "[a]s a result of issues raised in your deposition, effective immediately, you are suspended from all duties on behalf of the Company." *Id.* The Circuit explained that, "[o]n its face, defendant's suspension letter admits that defendant considered the subject matter of plaintiff's deposition in its decision to terminate him, *a deposition which included testimony*

*about his Title VII race discrimination claim.*" *Id.* (emphasis added). And the termination letter

also provided that one of the reasons for plaintiff's discharge was his "communication of his

dissatisfaction with his compensation"—which, plaintiff had alleged, "was the product of racial

discrimination." *Id.* at 549, 550. The Circuit thus concluded that "the suspension and

termination letters in conjunction with the timing of plaintiff's suspension and ultimate discharge

constitute[d] direct evidence of retaliatory animus . . . ." *Id.* at 551.

Here, plaintiff asserts that her summary judgment papers have provided direct evidence

of retaliation. Doc. 113 at 1, 17, 23 (Pl.'s Opp'n to Defs.' Mot. Summ. J.) (citing Doc. 86 at

184). Plaintiff relies on her Exhibit DD, which she describes as "one of [Ray Lauber's]

Memorandums of the investigation to [Interim President] Vietti dated August 20, 2015." Doc.

86-1 at 7 (Angelica Hale Decl. ¶ 27). Exhibit DD consists of four pages of findings, but it

includes no date and it never identifies the author.[8] One page of this exhibit includes the

following conclusion: "[A]lthough not racially motivated, it is the conclusion of this

investigation that [plaintiff's] meeting with the Provost did play a part in Dr. Alexander's

decision not to reappoint [plaintiff] to the temporary position or to the post the vacancy." Doc.

86 at 184; *see also* Doc. 86-4 at 3. Plaintiff asserts that ESU, with this conclusion, has conceded

that it did not renew her employment contract because she had complained to the Provost about

the racial epithet. Doc. 113 at 23. And indeed, the summary judgment facts establish that

plaintiff and her husband met with Provost David Cordle on June 26, 2015, to complain about

---

[8]     Whether plaintiff has laid a proper foundation for Exhibit DD is an issue, it appears. Plaintiff's
Declaration asserts that Exhibit DD is part of Mr. Lauber's findings of the investigation and that she
"received it in discovery" from defendants. Doc. 86-1 at 7 (Angelica Hale Decl. ¶ 27). Defendants never
object or otherwise assert that plaintiff lacks personal knowledge to authenticate the exhibit, or that the
evidence otherwise is inadmissible. The court thus receives this exhibit as part of the summary judgment
record and considers it when ruling the summary judgment motions.

the racial epithet. About two weeks later, Dean Alexander told plaintiff that ESU would not renew her contact after it expired on August 15, 2018.

Defendants' Reply never responds to this argument. Doc. 118. The court could treat defendants' omission as a waiver of this issue. *See Cayetano-Castillo v. Lynch*, 630 F. App'x 788, 794 (10th Cir. 2015) (holding that an appellant who does not respond to an argument in its reply brief "'waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellee'" because the court is not "required to do his work for him and dissect [the appellee's] plausible argument") (quoting *Hardy v. City Optical, Inc.*, 39 F.3d 765, 771 (7th Cir. 1994)).

But, even if the exhibit amounts to direct evidence of retaliation, that evidence neither entitles plaintiff to summary judgment as a matter of law nor precludes summary judgment against plaintiff's Title VII retaliation claim. To prevail on her Title VII retaliation claim—even with direct evidence—plaintiff still must establish that: (1) she engaged in protected activity, and (2) she sustained an adverse employment action (3) because of her protected activity. *See Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (explaining that for a retaliation plaintiff to prevail on "obtaining [or] preventing summary judgment" by relying on direct evidence, the evidence must establish that plaintiff "engaged in protected activity . . . and as a result suffered the adverse employment action of which [s]he complains"); *see also Clark v. Cache Valley Elec. Co.*, 573 F. App'x 693, 702 (10th Cir. 2014) (holding that, although plaintiff may have provided direct evidence that his employer fired him because he had complained, "this by itself is insufficient to survive summary judgment on the retaliation claim" because the plaintiff still "must . . . show that he complained because he reasonably believed that [the employer's] conduct violated Title VII."); *Apgar v. State of Wy.*, No. 99-8029, 2000 WL

1059444, at *10 (10th Cir. Aug. 2, 2000) (applying the *McDonnell Douglas* framework to a retaliation claim even though the summary judgment record included "direct evidence" of a causal connection between plaintiff's protected activity and the adverse employment action). The court thus applies the *McDonnell Douglas* test to the summary judgment facts here.

### 1. Prima Facie Case

As discussed, a prima facie case of retaliation requires plaintiff to establish that: "(1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between [her] protected activity and the adverse employment action." *Davis*, 750 F.3d at 1170 (citing *Twigg*, 659 F.3d at 998). The court addresses each element of plaintiff's prima facie case here, in turn, below.

### a. Protected Activity

Defendants assert two arguments to support their contention that the summary judgment facts fail to establish a triable issue whether plaintiff engaged in protected activity under Title VII. First, defendants argue, plaintiff cannot rely on any purported protected activity that occurred outside the time period asserted in her charge of discrimination. Second, defendants contend, plaintiff's complaints about the racial epithet did not constitute protected activity under Title VII. The court address each argument, separately.

*First*, defendants argue that plaintiff has failed to exhaust her administrative remedies for any incidents occurring before April 8, 2015, and after August 15, 2015. Doc. 107 at 5. The Tenth Circuit has explained that "'[a] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter.'" *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004)). "'This individual filing

requirement is intended to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims.'" *Id.* (quoting *Foster*, 365 F.3d at 1195). The exhaustion requirement mandates that "'each discrete incident of [discriminatory or retaliatory] treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted.'" *Id.* (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)).

Recently, the Tenth Circuit held in *Lincoln v. BNSF Railway Co.* that "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." *Id.* at 1185. "In practical terms, [*Lincoln*'s] holding means that the defense of failure to timely exhaust a Title VII claim 'is subject to waiver, estoppel, and equitable tolling.'" *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1169 (10th Cir. 2018) (quoting *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982)).

Here, defendants asserted the failure to exhaust as an affirmative defense in the Pretrial Order. Doc. 78 at 14 (Pretrial Order ¶ 4.b.10.). Also, because defendants asserted it pre-*Lincoln*, the court can treat defendants' exhaustion argument on summary judgment as having raised an affirmative defense of failure to exhaust. *Payan*, 905 F.3d at 1169 (treating a defendant's jurisdictional argument based on failure to exhaust under the "now-abrogated framework" post-*Lincoln* as having raised an affirmative defense of failure to exhaust); *see also* Doc. 107 at 6 (asserting jurisdictional argument based on failure to exhaust under existing case law that *Lincoln* since has abrogated); Doc. 109 at 4 (same).

The court agrees with defendants' argument that it cannot consider any incidents that occurred before April 8, 2015, and after August 15, 2015, when analyzing plaintiff's Title VII

retaliation claim. Plaintiff never exhausted such incidents in her charge of discrimination. "[A] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. United Parcel Serv.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (citation and internal quotation marks omitted). The Tenth Circuit instructs courts to "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Id.* (citation omitted).

Here, plaintiff's charge asserts that, on April 8, 2015, she was subjected to derogatory racial names written on notepads. Doc. 107-2 at 46–47. Also, plaintiff's charge alleges that she complained to the Dean about the derogatory names on the same day—*i.e.*, April 8—but nothing was done about it. *Id.* Plaintiff's charge asserts that ESU terminated her employment on August 15, 2015, when it didn't renew her employment contract. *Id.* And plaintiff's charge alleges that ESU terminated her "as an act of retaliation for having openly opposed" discrimination. *Id.* Even under the most liberal construction, the court cannot read plaintiff's charge as complaining about acts before April 8, 2015, or after August 15, 2015. Plaintiff's charge specifically limits her allegations to that time frame. And thus, the court does not consider any conduct outside it because plaintiff has not exhausted her administrative remedies for such conduct.

But, to the extent defendants argue that the court cannot consider other complaints that plaintiff made about the racial epithet because the charge never specifically describes those complaints, the court rejects that argument. Liberally construing plaintiff's charge, she alleges that: (1) she complained about the racial epithet and nothing was done about it; and (2) ESU terminated her employment because she complained about the racial epithet. From these allegations, an administrative investigation of plaintiff's retaliation claim "can reasonably be

expected to follow the charge of discrimination." *Jones*, 502 F.3d at 1187 (citation and internal quotation marks omitted). And it is reasonable to expect that the administrative investigation would investigate other communications that plaintiff had with ESU about her complaint of the racial epithet and Dean Alexander's response to her complaint. Thus, the court considers the other complaints plaintiff asserted after she learned about the racial epithet on April 8, 2015, but before her termination on August 15, 2015, when analyzing the parties' summary judgment motions.

*Second*, defendants' summary judgment motion argues that plaintiff's complaint about the racial epithet was not protected activity under Title VII because plaintiff cannot establish that the April 8 incident amounts to an unlawful employment practice prohibited by Title VII. Doc. 107 at 11. Defendants' summary judgment motion argues that no reasonable jury could conclude from the summary judgment facts that plaintiff was complaining about a hostile work environment based on just one instance of discrimination—*i.e.*, finding the word "NIGGAZ" written on a notepad. A hostile work environment is one that it is "permeated with discriminatory intimidation, ridicule, and insult[ ] that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (citation and internal quotation marks omitted). Importantly, "'[p]ervasiveness and severity are independent and equal grounds' upon which" plaintiff may establish a hostile work environment claim. *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (quoting *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998)).

Our Circuit has cautioned that "'the severity and pervasiveness evaluation is particularly unsuited for summary judgment' because it is inherently fact-found by nature." *Lounds*, 812 F.3d at 1222 (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)). At

the same time, the Circuit also has recognized "there is not, and by its nature cannot be a mathematically precise test for a hostile work environment claim." *Id.* (citation, internal quotation marks, and internal alterations omitted). Instead, "the totality of the circumstances is the touchstone of a hostile work environment analysis." *Id.* (citation, internal quotation marks, and internal alterations omitted).

When analyzing the totality of the circumstances, courts consider "a variety of factors . . . including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citations, internal quotation marks, and internal alterations omitted). Also, "courts assess whether the work environment is both subjectively and objectively hostile or abusive." *Id.* (citation, internal quotation marks, and internal alterations omitted).

Here, plaintiff asserts just one incident of alleged racial harassment—*i.e.*, the word "NIGGAZ" written on a notepad. But, as our Circuit has recognized, "courts frequently have found to be appropriate for jury consideration (and thus not appropriate for rejection at the summary-judgment phase)" evidence of "the use of the word 'nigger'—more specifically, the variant, 'nigga'" because of these words' "potentially powerful race-based effect." *Lounds*, 812 F.3d at 1229; *see also id.* at 1230 ("'[P]erhaps no single act can more quickly alter the conditions of employment than the use of an unambiguously racial epithet such as nigger by a supervisor. This single incident might well have been sufficient to establish a hostile work environment.'" (quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (other citations and internal quotation marks omitted)); *Tademy*, 614 F.3d at 1144 ("Indeed, it is difficult to imagine a message more calculated to make an African-American feel unwelcome in the workplace than

'nigger' engraved in his or her individual workspace."). Viewing the summary judgment facts here in plaintiff's favor, the court concludes that a reasonable jury could conclude that finding the word "NIGGAZ" written in the work place could constitute severe or pervasive harassment sufficient to support a complaint of hostile work environment. The court recognizes that a reasonable jury also could reach the opposite conclusion. But the court cannot find—as a matter of law—that the summary judgment facts here present no triable issue whether plaintiff engaged in protected activity by complaining about a hostile work environment. The court thus rejects defendants' argument supporting their motion for summary judgment on this basis.

Also, in their Response to plaintiff's summary judgment motion, defendants argue that plaintiff did not engage in protected activity by reporting the racial epithet to Dean Alexander because—as the graduate student's manager—plaintiff was acting within the course of her normal duties and not engaging in protected opposition to discrimination. *See, e.g.*, *Weeks v. Kansas*, 503 F. App'x 640, 642 (10th Cir. 2012) ("To engage in protected opposition [a manager] must instead 'step outside . . . her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting [Title VII] rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by [Title VII].'" (quoting *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486–87, 1486 n.8 (10th Cir. 1996)).

There are two problems with defendants' argument. First, the summary judgment facts don't establish as undisputed facts that: (a) plaintiff was the graduate student's manager; or (b) plaintiff was acting in the course of her normal duties by reporting discrimination. Second, and even if the facts established that plaintiff was the graduate student's manager, the summary judgment record contains facts from which a reasonable jury could conclude that plaintiff was

asserting her own rights under Title VII by complaining to Dean Alexander—as well as to Provost Cordle and law enforcement—about a perceived hostile environment that the racial epithet created at ESU. The court thus rejects defendants' summary judgment motion based on their argument that the summary judgment facts present no triable issue whether plaintiff engaged in protected activity.

### b. Adverse Employment Action

The Supreme Court has explained that Title VII protects employees from retaliation that produces an injury or harm. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006). A challenged employment action is "adverse" for the purposes of a Title VII retaliation claim if "a reasonable employee would have found [it] materially adverse." *Id.* at 68. This means that the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citation and internal quotation marks omitted).

One of defendants' filings asserts that plaintiff cannot establish that she sustained an adverse employment action because the undisputed summary judgment facts show that she quit her job on July 27, 2015, before her employment contract expired. Doc. 109 at 9. But the undisputed summary judgment facts also show that plaintiff quit her job *after* Dean Alexander told her in a July 8 email that ESU would not renew her employment contract. Another one of defendants' filings appears to concede that ESU's decision not to renew plaintiff's contract constitutes an adverse employment action. *See* Doc. 107 at 5 ("[T]he only adverse employment action that arguably occurred was the non-renewal of Plaintiff's contract."). The court thus concludes that a reasonable jury could conclude that plaintiff sustained an adverse employment action when ESU refused to renew her employment contract.

### c. Causal Connection

Finally, to establish a prima facie case of retaliation, plaintiff must show a causal connection between her protected activity and ESU's decision not to renew her employment contract. The Tenth Circuit has explained that "[t]he 'critical inquiry' at this prima facie stage is 'whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)). The temporal proximity between plaintiff's protected activity and her termination may demonstrate "a causal connection sufficient to 'justify an inference of retaliatory motive.'" *Id.* (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006)). But temporal proximity alone will not establish the necessary causal connection unless "'the termination is very closely connected in time to the protected activity.'" *Id.* (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)). The Tenth Circuit has determined that a period of six weeks between the protected activity and termination may, by itself, establish the requisite causal connection. *Anderson*, 181 F.3d at 1179. But a period of three months does not. *Id.*

Here, plaintiff asserts that she engaged in protected activity when she complained about the racial epithet to Dean Alexander immediately after she learned of it on April 8, 2015. Also, plaintiff asserts that she complained about the racial epithet on several other occasions. Viewed in plaintiff's favor, the summary judgment facts show that on June 15, 2015, plaintiff and her husband met with ESU Provost David Cordle and Judy Anderson to complain about the racial epithet. On July 1, 2015, plaintiff's husband sent an email to Interim President Vietti, copying Provost Cordle and plaintiff, advising that plaintiff and her husband had filed a report with ESU

police about a hate crime occurring on April 8, 2015. And, on July 7, 2015, plaintiff's husband met with Dean Alexander to express concerns about the racial epithet and his perception that the Dean had failed to take action on his complaints and those of his wife about the incident. The following day, July 8, Dean Alexander told plaintiff by email that ESU was not renewing her employment contract when it expired on August 15, 2015. From these facts, a reasonable jury could infer that the temporal proximity between plaintiff's complaints about the racial epithet and ESU's decision not to renew her contract establishes a causal connection. *See Anderson*, 181 F.3d at 1179 (holding that a period of six weeks between the protected activity and termination may, by itself, establish a causal connection).

Also, a reasonable jury could infer from Ray Lauber's report that plaintiff has established the requisite causal connection to support her retaliation claim. As already discussed, this report provides: "[A]lthough not racially motivated, it is the conclusion of this investigation that [plaintiff's] meeting with the Provost did play a part in Dr. Alexander's decision not to reappoint [plaintiff] to the temporary position or to the post the vacancy." Doc. 86 at 184; *see also* Doc. 86-4 at 3. Viewing the facts in plaintiff's favor, a jury could find that ESU refused to renew her employment contract because she had met with Provost Cordle to complain about the racial epithet. The court thus denies defendants' summary judgment motion based on their argument that plaintiff has failed to present a triable issue whether a causal connection exists between her protected activity and ESU's refusal to renew her employment contract.

### 2. Legitimate Non-Retaliatory Reason

Because the summary judgment record presents a triable issue whether plaintiff has established a prima facie case of retaliation, the *McDonnell Douglas* burden shifts to defendants to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Crowe v.*

*ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011). Defendants' assertions on this score are perplexing. Defendants' summary judgment filings assert several different reasons why ESU decided not to renew plaintiff's employment contract.

Defendants' summary judgment motion asserts that "the non-renewal of [plaintiff's] contract was purely related to budgetary issues impacting the university following the near-furlough of many employees in June 2015 and the fact that she should have never been hired into a position that she was not qualified for in SLIM." Doc. 107 at 5. But in defendants' Response to plaintiff's Motion for Summary Judgment, defendants assert that it took no adverse employment action against plaintiff because she quit her job. The Response also contends that, even if plaintiff hadn't quit her employment, ESU "had more than sufficient cause to discharge Plaintiff . . . based on the hostile work environment that she had created for Debra Rittgers." Doc. 109 at 10. This filing makes no argument that ESU decided against renewing plaintiff's contract based on budgetary concerns, or because she was not qualified for the job.

While defendants' multiple reasons are curious, they do not drive the analysis. For even if the court assumes that these different reasons—taken together or individually—provide a legitimate, non-retaliatory basis for ESU's decision not to renew plaintiff's employment contract, the summary judgment record, viewed in plaintiff's favor, presents triable issues about pretext. These issues preclude the court from granting defendants' summary judgment motion against plaintiff's Title VII retaliation claim. The court discusses the pretext issues in the next section.

### 3. Pretext

Assuming that defendants had established a legitimate and non-retaliatory reason for the decision not to renew plaintiff's employment contract, the burden shifts back to plaintiff to show that the proffered reasons for defendant ESU's actions are pretextual. *Crowe*, 649 F.3d at 1195

(citing *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006)). "A plaintiff may show pretext 'by demonstrating such weaknesses, implausibilities, inconsistencies, incoherenc[i]es, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons.'" *Id.* at 1196 (quoting *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007)). "Pretext may also be shown by providing direct evidence that the proffered rationale is false, or that the plaintiff was treated differently from similarly-situated employees." *Id.* (citing *Swackhammer*, 493 F.3d at 1167–68). Viewing the summary judgment facts in plaintiff's favor, a reasonable jury could infer that defendants' proffered reasons are pretextual for several reasons.

*First*, defendants' shifting explanations for the employment decision could permit the jury to infer pretext. *See, e.g.*, *Fassbender v. Correct Care Sols.*, 890 F.3d 875, 890 (10th Cir. 2018) (finding that defendant's "shifting explanations for terminating" plaintiff—along with other evidence—"could all be circumstantial evidence of pretext"); *Berkemeier v. Standard Beverage Corp.*, 171 F. Supp. 3d 1122, 1139 (D. Kan. 2016) (concluding that a "genuine issue of material fact [existed] whether Defendant's inconsistent and shifting explanations for Plaintiff's termination evidence pretext"). Here, defendants' summary judgment motion provides one set of reasons for not renewing plaintiff's employment contract—*i.e.*, budget concerns and plaintiff's lack of qualifications. But defendants' response to plaintiff's motion provides a different set of reasons—*i.e.*, plaintiff quit her employment before her contract expired, but even if she had not quit, ESU would have fired her for allegedly harassing Debra Rittgers in the workplace. A reasonable jury could infer pretext based on these shifting reasons.

*Second*, the summary judgment facts present a triable issue whether defendants' various reasons for the decision not to renew plaintiff's contract are pretextual. Defendants' first proffered reason for the decision is that ESU refused to renew plaintiff's contract because of budgetary concerns. Viewing the summary judgment facts in plaintiff's favor, a reasonable jury could find this proffered reason is pretext. Defendants rely on communications showing that ESU had anticipated implementing a furlough of non-essential employees—including plaintiff— in June 2015. As noted above, the court questions whether it can consider the documents defendants have submitted to support this assertion because defendants have not authenticated them. *See Johnson v. Weld Cty. Co.*, 594 F.3d 1202, 1209 (10th Cir. 2010) (explaining that it is "well settled in this circuit" that courts only can consider admissible evidence on summary judgment). But, even if properly authenticated, the summary judgment record contains evidence that ESU never implemented that furlough. Also, Dean Alexander's email to plaintiff on July 8, informing her that her employment contract would end on August 15, says nothing about whether budget concerns factored into ESU's decision not to renew plaintiff's contract. Instead, it describes how Dean Alexander was planning to search for two new permanent positions in the fall or spring "depending on financial circumstances this coming year." Doc. 86-5 at 183. Also, the summary judgment record contains evidence that ESU had renewed plaintiff's contract several times since she had started working for ESU less than a year earlier. Thus, a jury could infer from these facts that budget issues had not prevented ESU from renewing plaintiff's contract and that defendants' proffered reason of budget concerns is pretext.

Defendants' second proffered reason for refusing to renew plaintiff's contract is that she was not qualified for her job. But defendants cite no summary judgment facts—none—to support this assertion. To the contrary, the summary judgment record shows that ESU had

renewed plaintiff's contract several times before she complained about race discrimination. Also, before plaintiff complained about race discrimination, she had received positive feedback from Dean Alexander about her work and Dean Alexander had encouraged her to enroll in classes at ESU so that she could be eligible for more job opportunities. The court finds that these facts in the summary judgment record present a triable issue whether defendants' second proffered reason is pretext.

Defendants' third proffered reason for not renewing plaintiff's contract is that plaintiff quit before her contract ended. But plaintiff didn't quit until July 27—*after* Dean Alexander told plaintiff on July 8 that ESU did not plan to extend plaintiff's contract when it ended on August 15. Also, defendants assert, even if plaintiff hadn't quit, "ESU would have had more than sufficient cause to discharge Plaintiff (had that actually happened) based on the hostile work environment she created for Debra Rittgers." Doc. 109 at 10. On this point, the summary judgment record is murky at best. The evidence in the summary judgment record establishes that plaintiff accused Ms. Rittgers of authoring the racial slur and that plaintiff tried to file a police report against her. The summary judgment record also includes evidence of an "open letter" that plaintiff wrote to Dean Alexander on July 27, 2015. The letter advised Dean Alexander of plaintiff's decision to resign, described Debra Rittgers as the "most 'highly likely' suspect" for writing the racial epithet, and recited other criticisms about ESU, its administration, and its faculty. Doc. 47-3 at 7. From these facts, a reasonable jury might accredit ESU's assertion that it would have terminated plaintiff for creating a hostile work environment. But a reasonable jury also could reach the opposite conclusion—finding that plaintiff's complaints and concerns were legitimate based on ESU's purported failure to investigate her complaint about the racial epithet.

The court thus concludes that the summary judgment record presents a triable issue whether defendants' third proffered reason for refusing to renew plaintiff's contract is pretextual.

*Finally*, plaintiff has discharged her burden to defeat summary judgment by offering direct evidence of retaliation through Mr. Lauber's investigation memorandum. *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1397 (10th Cir. 1997) (explaining that "the defendant is entitled to summary judgment unless the plaintiff produces either direct evidence of discrimination or evidence that the defendant's proffered reason for the action taken was pretextual"). As discussed, this memorandum recites: "[A]lthough not racially motivated, it is the conclusion of this investigation that [plaintiff's] meeting with the Provost did play a part in Dr. Alexander's decision not to reappoint [plaintiff] to the temporary position or to the post the vacancy." Doc. 86 at 184; *see also* Doc. 86-4 at 3. The summary judgment facts establish that plaintiff and her husband met with Provost David Cordle on June 26, 2015, and complained about the racial epithet. About two weeks later, Dean Alexander told plaintiff that ESU would not renew her contact after it expired on August 15, 2018. And Mr. Lauber's memorandum recited that plaintiff's meeting with the Provost played a part in the decision not to renew plaintiff's employment contract. A reasonable jury could infer from this evidence in the summary judgment record that ESU chose not to renew plaintiff's employment contract as retaliation for complaining about racial discrimination.

For all these reasons, the summary judgment record—when viewed in plaintiff's favor— presents triable issues whether defendant ESU refused to renew plaintiff's employment contract as retaliation for complaining about racial discrimination, thus violating Title VII. The court thus denies defendants' motion seeking summary judgment against plaintiff's Title VII claim.

Also, the court cannot conclude as a matter of law that plaintiff is entitled to summary judgment in her favor on her Title VII claim. Viewing the summary judgment evidence in defendants' favor, a reasonable jury might accredit defendants' proffered explanations for deciding not to renew plaintiff's contract and find no evidence of a causal connection or pretext. Also, a reasonable jury could reach the opposite conclusion based on the summary judgment facts presented here. As such, the court cannot decide this claim on summary judgment as a matter of law. The court thus denies plaintiff's motion seeking summary judgment in her favor on her Title VII claim.

### B. Plaintiff's § 1983 Claim Against the Individual Defendants

The court now turns to plaintiff's § 1983 claim. Plaintiff asserts that defendants Cordle, Alexander, and Vietti violated § 1983 by terminating her employment contract because she exercised her First Amendment right to speak out against racism and discrimination. Doc. 78 at 12–13 (Pretrial Order ¶¶ 4.a.1–2.). Defendants assert two arguments to support their motion for summary judgment against plaintiff's § 1983 claim. The court addresses each one, below.

*First*, defendants assert that plaintiff's § 1983 claim fails as a matter of law because the summary judgment record contains no facts showing any of the three individual defendants personally participated in the purported constitutional violation. A viable § 1983 claim requires the plaintiff to establish "a [constitutional] violation traceable to a defendant-official's '*own individual actions*.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)) (emphasis added). A plaintiff may not seek to hold government officials liable "'for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676). Instead, a plaintiff must establish "'an affirmative link . . . between the constitutional deprivation and either the

supervisor's personal participation, his exercise of control or direction, or his failure to supervise.'" *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

Here, plaintiff never responds to defendants' argument that the summary judgment record contains no facts capable of supporting a finding or inference that any of the three individual defendants personally participated in the alleged constitutional violation. The court thus could treat plaintiff's omission as a waiver. Nevertheless, viewing the summary judgment record in plaintiff's favor, the undisputed facts show that plaintiff complained to Provost Cordle, Interim President Vietti, and Dean Alexander about racial discrimination. But no evidence in the summary judgment record permits a jury to find or infer that Provost Cordle or Interim President Vietti participated in the decision to terminate plaintiff's employment contract.[9]

In her asserted statements of fact, plaintiff makes conclusory assertions about ESU administrators' involvement in the employment decisions of other employees. She also contends that she saw Dean Alexander speaking with Interim President Vietti the day before Dean Alexander told plaintiff that ESU would not renew her contract. But plaintiff cannot establish Provost Cordle or Interim President Vietti's personal participation in the non-renewal decision based on her conclusory and speculative assertions. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (explaining that, to defeat a motion for summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise"). As the party opposing summary judgment, plaintiff must come forward

---

[9]     In contrast, a jury could infer from Mr. Lauber's memorandum that Dean Alexander made the decision not to renew plaintiff's contract. The relevant portion of the memorandum reads: "[I]t is the conclusion of this investigation that [plaintiff's] meeting with the Provost did play a part in *Dr. Alexander's decision* not to reappoint [plaintiff] to the temporary position or to the post the vacancy." Doc. 86 at 184 (emphasis added); *see also* Doc. 86-4 at 3 (emphasis added).

with "'specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)). Plaintiff has not shouldered that burden here. Thus, the court grants summary judgment against plaintiff's § 1983 claim asserted against defendants Cordle and Vietti because no reasonable jury could infer from the summary judgment facts that either one of these defendants personally participated in the alleged constitutional deprivation.

*Second*, defendants assert that all three of them are entitled to qualified immunity against plaintiff's § 1983 claim. "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, 573 U.S. 228, __, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). This doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity shields a government official from liability for money damages in his or her personal capacity "unless 'the official violated a statutory or constitutional right,' and 'the right was "clearly established" at the time of the challenged conduct.'" *Lane*, 134 S. Ct. at 2381 (quoting *al-Kidd*, 563 U.S. at 735).

So, when a defendant moves for summary judgment based on a qualified immunity defense, the burden shifts to the plaintiff to demonstrate that: (1) the defendant violated her constitutional or statutory rights; and (2) the right was clearly established at the time of the alleged unlawful activity. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009); *see also Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). "In their discretion, courts are free to decide which prong to address first 'in light of the circumstances of the particular case at hand.'" *Weise v.*

*Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (quoting *Pearson*, 555 U.S. at 236). "Ultimately, the record must clearly demonstrate the plaintiff has satisfied [t]his heavy two-part burden; otherwise, the defendant is entitled to qualified immunity." *Puller*, 781 F.3d at 1196 (citation, internal quotation marks, and internal alterations omitted).

Plaintiff doesn't provide much of a response to defendants' qualified immunity argument, even though she bears the "heavy . . . burden" on summary judgment to establish the two parts of the qualified immunity test. *Id.* Plaintiff's Opposition to defendants' summary judgment motion does recite the law governing qualified immunity. Doc. 113 at 20. And then, plaintiff provides one sentence to argue that qualified immunity does not apply here: "University administrators cannot claim ignorance of the First Amendment." Doc. 113 at 20. This conclusory statement will not suffice to satisfy plaintiff's burden to overcome the qualified immunity defense. Plaintiff fails to direct the court to any evidence in the summary judgment record that could create a triable issue whether the three individual defendants violated plaintiff's constitutional rights—*i.e.*, that the individual defendants decided not to renew plaintiff's contract because she spoke out on a matter of public concern as opposed to her own personal grievances—as defendants contend she did. *See* Doc. 109 at 11. Also, plaintiff never cites any evidence in the summary judgment record that could permit a reasonable jury to find that her right was clearly established at the time of the unlawful activity. Because plaintiff has not shouldered her burden to satisfy the two-part test to overcome a qualified immunity defense, the court grants summary judgment against plaintiff's § 1983 claim against the three individual defendants. They are entitled to qualified immunity.

In sum, the court grants summary judgment against plaintiff's § 1983 claim asserted against defendants Cordle and Vietti for two independent reasons: (1) the summary judgment

facts fail to present a triable issue whether Provost Cordle and Interim President Vietti personally participated in the alleged constitutional violation; and (2) Provost Cordle and Interim President Vietti are entitled to qualified immunity.  Also, the court grants summary judgment against plaintiff's § 1983 claim asserted against Dean Alexander because she is entitled to qualified immunity.

### V.        Conclusion

For reasons explained above, the court grants defendants' summary judgment motion in part and denies it in part.  Also, the court denies plaintiff's summary judgment motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Summary Judgment (Doc. 85) is denied.

**IT IS FURTHER ORDERED THAT** defendants' Motion for Summary Judgment (Doc. 106) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 9th day of November, 2018, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**