IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANGELICA HALE,

    Plaintiff,

v.

EMPORIA STATE UNIVERSITY,

    Defendant.

Case No. 16-4182-DDC-TJJ

## MEMORANDUM AND ORDER

On July 16, 2019, the court entered a Memorandum and Order finding for plaintiff Angelica Hale on her Title VII retaliation claim (Doc. 149-1). This ruling followed a trial to the court on January 8–10, 2019. Now, defendant Emporia State University ("ESU") has filed a Motion for Reconsideration (Doc. 154). In it, defendant argues that the court should reconsider its Order because the court misapprehended facts about final decision-making authority for hiring personnel, misapprehended the law governing supervisory authority, and misapprehended plaintiff's position about her claims. Doc. 154 at 2. Plaintiff has filed a Response (Doc. 155). Defendant has filed a Reply (Doc. 156). For reasons explained below, the court denies defendant's Motion for Reconsideration (Doc. 154).

**I.    Background**

Plaintiff asserts that defendant retaliated against her after she discovered and reported a racial slur written in a graduate teaching assistant's notebook. Doc. 149-1 at 1. After a two-day bench trial, the court found for plaintiff on her Title VII retaliation claim. Doc. 149-1. The court evaluated plaintiff's claim under the *McDonnell Douglas* burden-shifting test. *Id.* at 9. "The *McDonnell Douglas* framework . . . requires a plaintiff to establish a prima facie case of

retaliation by showing that: '(1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between [her] protected activity and the adverse employment action.'" *Id.* The court found that plaintiff had shouldered her burdens under this test. *First*, the court found that plaintiff had shown that she had engaged in protected activity when she reported the racial slur to Dean Alexander and Provost Cordle. *Id.* at 11. *Second*, the court found that plaintiff had proved by a preponderance of evidence two materially adverse actions by defendant ESU: (1) its decision not to renew Ms. Hale's temporary appointment, and (2) its decision not to post a full-time position for Ms. Hale. *Id.* at 12. *Last*, the court found that plaintiff had proved that—but for her complaint—Dean Alexander would have posted a full-time position specifically formulated for plaintiff. *Id.* at 15.

## II. Legal Standard Governing the Reconsideration Motion

Neither the Federal Rules of Civil Procedure nor this court's local rules allow for a motion for reconsideration of a dispositive order when no judgment has been entered. But, the court has authority to revise any interlocutory order before the entry of final judgment. And the court generally considers such motions under the same standards as a motion to reconsider:

> [I]t is well within the court's discretion to revise an interlocutory order at any time prior to the entry of final judgment. Consequently, the court will treat the motion as a motion for reconsideration based on the court's inherent power to review its interlocutory orders. In doing so, the court will apply the legal standards applicable to a Rule 59(e) motion to alter or amend and/or a motion to reconsider a non-dispositive order under D. Kan. Rule 7.3, which are essentially identical.

*Ferluga v. Eickhoff*, 236 F.R.D. 546, 549 (D. Kan. 2006) (citations omitted). The court thus evaluates defendant's motion as a motion for reconsideration.

Under D. Kan. Rule 7.3(b), a motion to reconsider "must be based on: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error to prevent manifest injustice." "A motion to reconsider is appropriate where the court has

obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of due diligence." *Comeau v. Rupp*, 810 F. Supp. 1172, 1174–75 (D. Kan. 1992) (citations omitted). But, a disappointed litigant may not use reconsideration to revisit issues already addressed or assert new arguments or supporting facts that were available for presentation when the court originally decided the question. *Id.* (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.), *cert. denied*, 506 U.S. 828 (1992)). A court has considerable discretion when deciding a motion to reconsider. *Hancock v. Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988); *Shannon v. Pac. Rail Servs.*, 70 F. Supp. 2d 1243, 1251 (D. Kan. 1999) (citing *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997)).

**III. Analysis**

Under D. Kan. Rule 7.3, a movant seeking reconsideration must file its motion within 14 days after the order is filed, unless the court extends the time. D. Kan. Rule 7.3(b). The court issued its Memorandum and Order finding in plaintiff's favor on her Title VII retaliation claim on July 16, 2019. Doc. 149-1. Defendant never asked the court to extend the deadline for filing a reconsideration motion. Nearly 60 days later, on September 11, 2019, defendant filed the current motion. To state the obvious, defendant didn't file a timely motion.

While it could decline to consider the motion, the court, in its discretion, has decided to accept the motion and rule it on its merits. But the outcome is the same. A motion for reconsideration isn't an "appropriate [device] to revisit issues already addressed." *Ferluga*, 236 F.R.D. at 549. Likewise, reconsideration motions are no place to raise arguments "that could have been raised in prior briefing." *Id.*

Defendant's motion asks the court to reconsider the following: (1) its factual finding that Dean Alexander exercised control over the decision not to hire plaintiff for a full-time position (Doc. 149-1 at 17 n.6); (2) its legal conclusion that Dean Alexander's decision not to hire plaintiff was sufficient to establish retaliation against plaintiff (*id.*); and (3) its consideration of plaintiff's claim that defendant had retaliated against her by failing to hire her for a full-time position (*id.* at 12–13). Doc. 154.

**A. Misapprehension of the Facts**

To prevail on her claim, plaintiff had to establish a causal connection between her protected activity and the adverse employment action. Doc. 149-1 at 13; *Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. 338, 346 (2013). The court concluded that plaintiff had carried her burden on causation. Specifically, the court found that plaintiff had "established by a preponderance of the evidence that—but for her complaint to Provost Cordle on June 26—Dean Alexander would have posted a position for a marketing coordinator in the SLIM program and would have selected Ms. Hale to fill that position." Doc. 149-1 at 15.

Defendant argues that the court's conclusion was incorrect because Provost Cordle—not Dean Alexander—had final authority to create a new position and select a candidate to fill it. Doc. 154 at 2–3. And, defendant argues, "in the spring before Ms. Hale discovered the alleged racial slur, Provost Cordle [had] decided he would not approve creating a new permanent position for [p]laintiff . . . ." Doc. 154 at 6. Defendant contends that if it prevails on this argument, it precludes plaintiff from proving a causal connection between plaintiff's protected activity and the adverse employment action.

Defendant cites Provost Cordle's testimony as evidence establishing that he and he alone had final authority to create new permanent positions at ESU. Provost Cordle testified that he is

Provost and Vice President for Academic Affairs at ESU, and all department heads report to him. Doc. 152 at 43. Dean Alexander had talked to Provost Cordle about creating a permanent position for plaintiff. *Id.* at 151. But Provost Cordle was "skeptical . . . and not prepared to agree to it." *Id.* Defendant argues there is "no evidence in the record indicating that Dean Alexander . . . was authorized to create and post new permanent positions and hire personnel for them." Doc. 154 at 4. Defendant's argument fails for two reasons.

First, defendant never argued at trial that Provost Cordle had sole authority to create permanent positions. *See* Doc. 149-1 at 17 n.6 ("Although ESU focused solely on Provost Cordle's authority for temporary appointments, ESU might have argued that the Provost also possessed sole authority to hire Ms. Hale for a full-time position."). And, a "motion for reconsideration is not . . . an opportunity for the losing party to raise new arguments that could have been presented originally." *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1213 n.2 (10th Cir. 2001).

Second, the court already considered this possibility. Specifically, the court found that Dean Alexander exercised some control over the decision not to hire plaintiff for a full-time position:

> Although ESU focused solely on Provost Cordle's authority for temporary appointments, ESU might have argued that the Provost also possessed sole authority to hire Ms. Hale for a full-time position. But, Ms. Hale presented sufficient evidence to demonstrate that it was more likely than not that Dean Alexander exercised control over the decision. *See Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1199 (10th Cir. 2015) (explaining that, in a Title VII retaliation case, defendant's argument that one employee, unaware of plaintiff's protected activity, was the sole decisionmaker in terminating plaintiff, may be rejected by factfinder if evidence shows a second employee, aware of plaintiff's protected activity, made the decision jointly). In multiple places, the ESU Report refers to Dean Alexander's decision not to post the vacancy. Def.'s Ex. 424 at 3, 19. And, Provost Cordle testified that Dean Alexander approached him about creating a full-time position for Ms. Hale. On cross-examination, Mr. Lauber conceded that Dean Alexander's action, *i.e.*, not renewing Ms. Hale's employment, could be interpreted

5

> as retaliation. Taken together, the court concludes that Dean Alexander functioned
> as a decisionmaker when deciding whether to post and offer the full-time position
> to Ms. Hale.

Doc. 149-1 at 17 n.6. Whether Provost Cordle had ultimate authority to approve a new full-time position doesn't affect the court's finding that Dean Alexander exercised some control over the decision not to hire plaintiff for a full-time position. Defendant's own exhibit stated as much: "[plaintiff's] meeting with the Provost did play a part in Dr. Alexander's decision not to reappoint [plaintiff] to the temporary position or to post the vacancy." Def.'s Ex. 424 at 3. Whether Provost Cordle was "skeptical" and "not prepared" to create a permanent position for plaintiff in the spring before she complained about the racial slur doesn't neutralize Dean Alexander's decision not to hire plaintiff for a full-time position. The court thus finds no obvious error warranting reconsideration.

### B. Misapprehension of the Law

Defendant next argues that the court misapprehended the law by failing to consider Provost Cordle's lack of retaliatory motive. Doc. 154 at 7–8. Defendant cites *Macon v. United Parcel Service, Inc.*, 743 F.3d 708, 715 (10th Cir. 2014) for the rule that "[w]here, as here, a supervisor's authority to make employment related decisions is contingent upon the agreement or affirmation of a higher level manager, the relevant motive is that of the final decision-maker." Doc. 154 at 7. Defendant argues that Provost Cordle was the final decision-maker, and there was no evidence establishing his retaliatory motive.

But as explained above, the court found that Dean Alexander exercised control over the decision not to hire plaintiff for a full-time position. And the facts allowed the inference that her decision was retaliation. As the court explained in its earlier Memorandum and Order (Doc. 149-1), the factfinder may reject defendant's argument that one employee, unaware of plaintiff's

6

protected activity, was the sole decisionmaker in terminating plaintiff, if the evidence shows a second employee, aware of plaintiff's protected activity, made the decision jointly. *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1199 (10th Cir. 2015). Here, defendant introduced evidence that Dean Alexander decided not to post the full-time position intended for plaintiff. And, the court found, this decision resulted from the meeting plaintiff had with Provost Cordle about the racial slur. *See, e.g.*, Memorandum and Order of July 16, 2019 (Doc. 149-1 at 16) (quoting conclusion in ESU's report about its own investigation that the decision "not to post a position for [Ms. Hale] to apply for appears, in part, to be a result not of race, but in response to the meeting [the Hales] had with [Provost] Cordle.").

The court declines to relitigate this factual determination.

**C. Misapprehension of Plaintiff's Position**

The Pretrial Order recites that one of plaintiff's legal claims is that defendant "retaliated against [her] because she engaged in activities protected by Title VII." Doc. 78 at 13. Yet, defendant's motion argues that plaintiff never has asserted a claim for an alleged failure to hire plaintiff for a full-time position at ESU, and the court shouldn't have considered this claim at trial. Doc. 154 at 8.

"It is well established that the pretrial order supersedes all pleadings and controls the subsequent course of the case." *Zapata v. IBP, Inc.*, 19 F. Supp. 2d 1215, 1217 (D. Kan. 1998). Under Fed. R. Civ. P. 15(b)(2), "[a] party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue."[1] And, "[a] party impliedly

---

[1] "Rule 15(b)(2) does not require that a conforming amendment be made and there is no penalty for failing to do so. The rule clearly states that the absence of a formal amendment or a request for leave to amend 'does not affect the result of the trial' of those issues actually litigated." 6A Charles Alan Wright

7

consents to the trial of an issue not contained within the pleadings either by introducing evidence on the new issue or by failing to object when the opposing party introduces such evidence." *Eller v. Trans Union, LLC*, 739 F.3d 467, 479 (10th Cir. 2013) (quoting *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1280 (10th Cir. 2004)).

Here, at trial, defendant never objected to evidence about ESU's failure to hire plaintiff. Indeed, defendant introduced evidence on the issue during its own case in chief.[2] Defendant thus consented to litigating whether defendant retaliated against plaintiff by failing to hire her for a full-time position. Since defendant consented to litigate the issue, the court denies reconsideration of this issue.

Finally, defendant argues failure to exhaust because plaintiff didn't allege that defendant retaliated against her by failing to create a permanent position for plaintiff in her Kansas Human Rights Commission ("KHRC") Complaint. Doc. 154 at 8. The Tenth Circuit instructs courts to "liberally construe" EEOC charges when determining whether administrative remedies have been exhausted. *Jones v. United Parcel Serv.*, 502 F.3d 1176, 1186 (10th Cir. 2007). But the court need not determine whether plaintiff exhausted her remedies on the failure to hire issue because a plaintiff's failure to exhaust "merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). Defendant preserved

---

& Arthur R. Miller, *Federal Practice and Procedure* § 1493 (3d ed. 2019) (quoting Fed. R. Civ. P. 15(b)(2)).

2     In its case in chief, defendant admitted its own report (Def's Ex. 424) which "provide[d] direct evidence that Ms. Hale's meeting with Provost Cordle influenced Dean Alexander's decision not to post the full-time job position." Doc. 149-1 at 16. Defendant's report found that "[t]he decision not to post a position for Angelica to apply for appears, in part, to be a result not of race, but in response to the meeting Angelica and Melvin had with David Cordle" where they complained about the racial slur. Def's Ex. 424 at 19.

the failure to exhaust affirmative defense in the Pretrial Order. Doc. 78 at 14. The defense was thus a triable issue in the case. *See Radio Corp. of Am. v. Radio Station KYFM, Inc.*, 424 F.2d 14, 16 (10th Cir. 1970). But defendant never raised this defense at trial or in its post-trial submissions. And defendant had ample opportunity to do so in response to the evidence submitted about defendant's failure to hire plaintiff for a permanent position. Because a motion for reconsideration is "not an opportunity . . . to offer new legal theories or facts," the court declines to decide, on reconsideration, whether plaintiff failed to exhaust her administrative remedies. *Ferluga*, 236 F.R.D. at 551.

### IV. Conclusion

Defendant hasn't established an intervening change in controlling law, availability of new evidence, or a need to correct clear error or prevent manifest injustice under D. Kan. Rule 7.3(b). Exercising its discretion, the court denies defendant's Motion for Reconsideration (Doc. 154).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Reconsideration (Doc. 154) is denied.

**IT IS SO ORDERED.**

**Dated this 19th day of November, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
