IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANGELICA HALE,

    Plaintiff,

v.

EMPORIA STATE UNIVERSITY,

    Defendant.

Case No. 16-4182-DDC

## MEMORANDUM AND ORDER

This matter is before the court on pro se plaintiff Angelica Hale's Brief Regarding Economic Damages (Doc. 150). Defendant Emporia State University ("ESU") has responded (Doc. 153).

**I.    Background**

On July 16, 2019, the court entered a Memorandum and Order finding for Ms. Hale on her Title VII retaliation claim (Doc. 149-1). The court awarded Ms. Hale nominal damages of $1 because the court lacked sufficient evidence to determine the appropriate relief.[1] Doc. 149-1 at 23. The court directed the parties to submit briefing on front pay, reinstatement, and back pay. *Id.*

---

[1]    The court already has found that Ms. Hale cannot recover compensatory damages because she did not establish any evidence from which the court could fashion a non-speculative award. Doc. 149-1 at 19. The court also found that punitive damages were unwarranted because plaintiff never established that ESU failed to make good-faith efforts to comply with Title VII. *Id.* at 21. Since Ms. Hale represented herself at trial, she cannot recover attorneys' fees. *Id.* at 22–23. Thus, the only remaining damages issues for the court to decide are back pay, reinstatement, and front pay. *Id.* at 21–22.

II.     Discussion

Title VII permits the court to award a successful plaintiff any appropriate relief, including reinstatement, back pay, "'or any other equitable relief'" that the court deems appropriate. *Daneshvar v. Graphic Tech., Inc.*, 40 F. Supp. 2d 1225, 1239 (D. Kan. 1998) (quoting 42 U.S.C. § 2000e–5(g)). "District courts possess considerable discretion to devise appropriate remedies for Title VII violations." *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1203 (10th Cir. 2015) (citations omitted). But, the record must support the district court's damages award. *Davoll v. Webb*, 194 F.3d 1116, 1145 (10th Cir. 1999). For reasons explained below, the court defers ruling on Ms. Hale's request for economic damages and orders an evidentiary hearing on the front pay and back pay awards.

**A. Back pay**

Back pay awards generally cover the time up until the date of judgment. *Daneshvar*, 40 F. Supp. 2d at 1239 (citing *Daniel v. Loveridge*, 32 F.3d 1472, 1477 (10th Cir. 1994)). But, plaintiff has an obligation to use reasonable methods to mitigate her damages. *Id.* (citing 42 U.S.C. § 2000e–5(g)(1)). "This mitigation usually takes the form of replacement employment." *Leidel v. Ameripride Servs., Inc.*, 276 F. Supp. 2d 1138, 1142 (D. Kan. 2003) (citing 42 U.S.C. § 2000e–5(g)(1)). The employer shoulders the burden of showing a lack of reasonable diligence. *Id.* (citing *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980)). The employer can meet its burden by showing, "'(1) that the damage suffered by plaintiff could have been avoided, *i.e.*, that there were suitable positions which plaintiff could have discovered and for which [s]he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position.'" *Id.* (quoting *Sandia*, 639 F.2d at 627).

Ms. Hale requests back pay of $362,077.06, plus interest. Doc. 150 at 9. She bases her calculation on her projected salary—had ESU employed her as marketing coordinator—from 2015 to 2019. Doc. 150-1 at 30. She asserts that ESU had promised her the position for one year, at an annual salary of $56,100. *Id.* She then applied a 34% increase to the salary to account for benefits, bringing the total amount for the first year to $84,900. *Id.* For the next year (the 2016-17 academic year), she calculated a total amount of $86,173.50, based on a projected 1.5% annual raise. *Id.* She predicts that she would have completed her bachelor's degree after two years, raising her total compensation to $94,790.85 for the 2017-18 academic year. *Id.* Finally, she projects compensation of $96,212.71 in 2018-19. *Id.*

ESU argues there is no evidence in the record supporting Ms. Hale's assumptions and calculations. Doc. 153 at 3. The only evidence in the record, ESU argues, are copies of Ms. Hale's three temporary appointments. *Id.* at 4. Ms. Hale's third temporary appointment was for a period of 10 weeks at a total salary of $8,888.90. *Id.* She resigned three weeks before the end of that appointment. *Id.* So, ESU concedes, Ms. Hale could claim $2,6667.67 as back pay for those three weeks. *Id.* ESU asserts that otherwise, the record contains no evidence supporting a back pay award of $362,077.06. *Id.* at 3.

The court agrees with ESU. No evidence in the record supports Ms. Hale's calculations. It is true that Ms. Hale's brief asserts ESU had promised her the marketing coordinator position at an annual salary of $56,100. But that assertion is not evidence. Also, her calculations assume that she would have received that salary and remained in the position until now, completed her bachelor's degree, and received periodic raises.

ESU contends that the evidence shows Ms. Hale has failed to mitigate her back pay damages. Exhibit A shows Ms. Hale's email inbox containing job-related emails, but provides

3

no information about what jobs Ms. Hale actually applied for, or the result of those job applications. Doc. 150-1 at 2–15. Ms. Hale's conclusory assertions that she was unemployable from 2015 to present—and that she is thus entitled to a salary, benefits, and raises she might have earned at ESU—doesn't provide any evidence to support findings justifying back pay.

Ms. Hale did not request an evidentiary hearing on the matter.[2] But, since the court cannot award back pay without evidence on Ms. Hale's claimed damages and her mitigation efforts, the court reserves its ruling. And, the court orders an evidentiary hearing on the matter.

### B. Front pay

Front pay "'is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.'" *McInnis v. Fairfield Cmty., Inc.*, 458 F.3d 1129, 1145 (10th Cir. 2006) (quoting *Abuan v. Level 3 Commc'n, Inc.*, 353 F.3d 1158, 1176 (10th Cir. 2003)). "Front pay is an equitable remedy awarded by the court (not the jury)." *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 1000 (10th Cir. 2005) (citing *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1425–27 (10th Cir. 1991)). Reinstatement and front pay are mutually exclusive, and, while reinstatement is preferred, the court may choose front pay due to the level of animosity between the parties. *Daneshvar*, 40 F. Supp. 2d at 1240–41. "The amount [of front pay], if any, is set in the court's discretion[.]" *Whittington*, 429 F.3d at 1000. As the Tenth Circuit has explained,

> Numerous factors are relevant in assessing front pay including work life expectancy, salary and benefits at the time of termination, any potential increase in salary through regular promotions and cost of living adjustment, the reasonable availability of other work opportunities, the period within which the plaintiff may become re-employed with reasonable efforts, and methods to discount any award to net present value.

---

[2] The court informed the parties that either could request a hearing on its briefing. Neither party did so. Doc. 149-1 at 22.

4

*Id.* at 1000–01 (quoting *Davoll*, 194 F.3d at 1144); *Carter v. Sedgwick Cty., Kan.*, 929 F.2d 1501, 1505 (10th Cir. 1991) (determining front pay must be based on "more than mere guesswork"). But, the court has considerable discretion to fashion a front pay award, because such an award requires the court "'to predict future events and consider many complicated and interlocking factors . . . .'" *Whittington*, 429 F.3d at 1001 (quoting *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1458 (10th Cir. 1997)). The court may consider all the evidence presented about the "individualized circumstances" of the plaintiff and defendant, but it "'must avoid granting the plaintiff a windfall.'" *Id.* (quoting *Mason*, 115 F.3d at 1458).

Here, the parties agree that reinstatement is not a viable option. Doc. 150 at 9; Doc. 153 at 3. So, the court considers whether front pay is appropriate. Ms. Hale requests $1,363,724.42—covering twelve years—in front pay. Doc. 150-1 at 30. She alleges that she has "diligently sought employment" since leaving ESU in 2015. Doc. 150 at 2. But, she has not yet secured a full-time job. *Id.* She states that by rescinding the job posting intended for her, ESU has "effectively doomed" her employment opportunities. *Id.* at 4. Ms. Hale's calculations are based on her projected salary as marketing coordinator at ESU, and predictions that she would have completed her bachelor's and master's degrees, had an annual 1.5% raise, and retired at age 70. Doc. 150-1 at 30.

Ms. Hale provides several exhibits to support her arguments. Exhibit A is titled "Jobs Applied to by Angelica Hale Since July 2015." Doc. 150-1 at 1. The exhibit appears to be a screenshot of a folder in an email account showing pages of emails (in listed form but not showing the contents), which Ms. Hale says documents her efforts to find full-time employment. Doc. 150 at 2–3. Ms. Hale cites Exhibits B–D as examples of the negative publicity that

5

allegedly has rendered her unemployable. Doc. 150-1 at 16–28; Doc. 150 at 3. Finally, Exhibit E contains Ms. Hale's front and back pay calculations. Doc. 150-1 at 30.

ESU asserts that the court should deny Ms. Hale's request for front pay. Doc. 153 at 4–5. ESU argues there is no evidence in the record to support the Tenth Circuit's front pay factors discussed above (*i.e.*, work life expectancy, salary and benefits at the time of termination, potential increases in salary, availability of other work opportunities, reemployment opportunities, and discount methods to net present value). *Id.* at 4. So, ESU argues, the court should not award a front pay award because it will be speculative and produce a windfall to Ms. Hale. Doc. 153 at 4–5 (citing *McInerney v. United Air Lines, Inc.*, 463 F. App'x 709, 726 (10th Cir. 2011)).

The court again agrees with ESU. No evidence in the record supports Ms. Hale's front pay request. Ms. Hale asserts that ESU has "doomed" her employment opportunities, and that she is now permanently unemployable. But, she does not present evidence addressing the Tenth Circuit's front pay factors. *See Whittington*, 429 F.3d at 1000–01 (10th Cir. 2005) (articulating the relevant factors in assessing a front pay award). Consequently, awarding Ms. Hale front pay on the current record would amount to "mere guesswork." *Carter*, 929 F.2d at 1505. The court thus orders the parties to participate in an evidentiary hearing on both the back and front pay issues.

**III. Conclusion**

The district court has considerable discretion to devise appropriate remedies for Title VII violations. But, it must base those remedies on evidence in the record. Ms. Hale has not presented evidence sufficient for the court to award her back and front pay. So, the court

6

reserves its ruling. And the court orders the parties to participate in an evidentiary hearing on the back pay and front pay awards.

**IT IS THEREFORE ORDERED THAT** the court will defer ruling on Ms. Hale's economic damages. And the parties will participate in an evidentiary hearing on a date to be determined. To facilitate planning and scheduling for that hearing, the court sets a telephone conference for Tuesday, December 17, 2019 at 1:30 PM.

**IT IS SO ORDERED.**

**Dated this 9th day of December, 2019, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**